**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 00-cr-00504-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL D. WILHITE,

    Defendant.

_____

**DEFENDANT MICHAEL WILHITE'S TRIAL MEMORANDUM: CLOSING ARGUMENT**
_____

    Michael Wilhite, by and through counsel, Richard F. Bednarski and Sherman & Howard L.L.C. hereby submits his Closing Argument:

    In 1995 and 1996, Michael Wilhite committed a crime. He has had to pay for that crime, and, through restitution, still does. However, Michael's wife, Dee, has committed no crime and this Court should not punish her, or make her pay, for Michael's crime, as the government is asking. This Court should hold Michael Wilhite, and only Michael Wilhite, accountable for his restitution.

    It was Dee Wilhite who started, financed and built Advanced Floor Concepts (AFC) from the ground up. With the help of her employees, *including* Michael, Dee's construction business flourished. It is not disputed that Mike helped Dee's company grow. Like every other employee at AFC, Michael Wilhite was paid a salary for his contributions. Taking $1.7 million from Dee's company, Advanced Floor Concepts, is not holding Michael accountable for his past crime. Taking $1.7 million from AFC is making Dee Wilhite and her company accountable for Michael's past crime.

Based on the Government's Trial Brief, they are proceeding under the nominee theory, constructive trust theory and resulting trust theory.  Before the Court gets to the question of whether or not Dee Wilhite is the nominee of Michael Wilhite as the owner of AFC or there is a constructive or resulting trust, the government must first prove that Michael Wilhite has an interest in AFC pursuant to Colorado state law.  *Holman v. U.S.*, 505 F.3d 1060 (2007).  In its Trial Brief, opening statement and presentation of evidence, the government has *never* identified the Colorado state law that establishes that Michael has an interest in AFC.

The government has failed to meet its burden of proving that Michael Wilhite has an interest in AFC pursuant to Colorado law.  AFC was Dee's idea. She started the company, she financed the company with *her* money, *her* assets and *her* credit, and she had the contacts with contractors to be able to sell them AFC's product.  Dee still runs the company, still finances the company, and it is still her assets on the line for the company.

If the Court believes the government has met its initial burden of establishing that Mike Wilhite has an interest in AFC pursuant to Colorado law, the government must then prove that Dee is the nominee of Michael and Michael is, in fact, the actual owner of AFC, or prove that there should be a constructive or resulting trust because of fraud.  Again, in this case the government has failed to meet its burden and prove these theories because AFC is Dee's company, not Mike's and there has been no fraud.

2

## MICHAEL WILHITE DOES NOT OWN AN INTEREST IN ADVANCED FLOOR CONCEPTS

The government has failed to identify any Colorado law that establishes or proves that Michael has an interest in AFC.  In 1997, during her building inspections, Dee Wilhite saw that contractors were starting to use structural steel floors instead of wood. Based on her professional experience in construction, Dee determined that a construction company that specialized in structural steel floors could be profitable.  Dee decided to start AFC because she wanted to get into the structural steel floor business at a time when there were not a lot of companies, let alone women, installing structural steel floors.  Dee registered AFC.  Dee prepared and filed the Articles of Organization (Exhibit C) and the Operating Agreement (Exhibit D) as the sole member of the LLC. Dee loaned money to AFC from her company, DW Support Systems (Exh K), borrowed money from her mother (Exh H) and obtained a Line of Credit from Castle Rock Bank (Exh G).  Dee hired two employees, Michael Wilhite and Roger Vela.  Dee ran the company, handled the finances, sold the product to the contractors she knew, and helped install the floors.  As an AFC employee, Michael handled some sales but mainly installed the steel flooring.

Tory Sanborn, who worked for Barton Supply when they started supplying steel to AFC in 1997, testified that Dee was the owner of AFC.  She was the one who handled the negotiation of prices with Barton, the finances, invoices, and ordering of supplies.  It was Dee who called Mr. Sanborn when something was wrong with either the product or the financials, during Mr. Sanborn's time working with AFC.  Mike's role

3

in the company was in the field.  Mike would call for supplies, changes in orders, new orders, or issues with the product.

As AFC grew, all the employees wore many different hats (i.e., sales, ordering, installation, or general manager).  As seen by Exhibit Q, Torin Jackson and Fern Pena signed contracts on behalf of AFC, just as Mike did.  However, there has always been one owner and ONLY one owner.  That owner is Dee Wilhite.

From 1997 through 2008, Michael Wilhite worked for, and received a salary from, AFC.  For many of those years, he managed the company's operations while Dee managed the financial side of AFC and managed her other company, DW Support Services.  At times, Mr. Wilhite held himself out as General Manager and CEO, but he **never** proffered himself as AFC's owner.

The government points to a handful of documents (out of thousands) that mention Michael as the owner of AFC (i.e., a Christmas letter (Exhibit 12) and a Commercial Security Agreement (Exhibit 28)).  The Christmas letter states that "Michael's business is doing well…"  As Dee has testified, "…Michael's company…" referred to the company he was *working for,* not a company that he *owned*.  Additionally, Dee testified that the bank application in which she listed Mike as the owner of AFC, was a simple mistake on her part.  She testified that her sister had died less than 2 weeks before filling out the application and she wasn't thinking clearly.  Mike did not prepare that application and he only signed it at Dee's request.  This testimony is uncontroverted by the government.

In 2008, Mr. Wilhite left the company because of serious health issues, specifically TIA's (strokes) and sleep apnea (see Defendant's Exhibit AA).  He stopped

4

receiving a salary and was no longer working in the office. Roger Otterstein and Brendan DePaola ran the day-to-day operations of the company. In late 2009, Roger was diagnosed with cancer and was unable to run the day-to-day company operations and Dee had to let Brendan DePaola go because of the industry's economic downturn. Additionally, Dee's back injury had deteriorated to the point that she could no longer drive long distances. Mike's health had recovered significantly enough that he could make the two hour trip to Castle Rock from Westcliffe and at Dee's request, he went back to help at AFC. Also at Dee's request, Mr. Wilhite has continued to travel to Castle Rock, CO, a couple times a week to be her eyes and ears at the AFC office. Torin Jackson took over running the day-to-day operations of the company and continues in that role today. Mike goes to AFC each week to check on things at the office for Dee, and also because he has established a personal relationship with the AFC employees and he enjoys spending time with them. Mike also goes to Castle Rock each week to do the family shopping at the major retailers there. He enjoys and needs a respite from the ranch and all the work he puts in there.

The government also points to Mike's involvement and statements in the negotiations of the potential sale of AFC as evidence of his interest and ownership in AFC. However, the government's argument is unfounded. In 2013, Mike negotiated with Kodiak at Dee's request and helped her obtain the necessary information and documents for the due diligence, which stated that Dee was the sole owner of AFC. Mike never held himself out as the owner. Both Mr. Cleveringa and Mr. Stubbert testified that Dee owned the company and **only** Dee could make the final decision on the sale of AFC, as well as, execute the proper documents. Mr. Stubbert even testified

5

that Mike's role and his role were similar in that neither is the owner of their respective companies, but they both were involved in the negotiations.

While there was a memorandum that stated Mike and Dee would retain majority ownership, that memorandum was never finalized, was prepared at the request of Kodiak on their form and was not accurate. Dee Wilhite never approved the language in that memorandum and it was never sent to the AFC employees. Finally, Dee Wilhite, not Mike Wilhite, stopped the sale negotiations because of her lack of trust as testified by Mr. Stubbert.

The government also relies heavily on Dennis Cross and Linda Gould to establish that Mike is the owner of AFC. However, neither were employees in 1997 when Dee started AFC and only worked at AFC in 2008/2009. Linda Gould testified that everyone at AFC knew that Mike was the owner but she never pinpoints who, specifically, knew or told her. Ms. Gould testified that Torin Jackson, Brendan DePaola, and Cindy Barker knew that AFC is Mike's company. Jackson, DePaola and Barker all testified that AFC is *Dee's* company. Ms. Gould also testified that one day in her office, Mike screamed at her that it was his company and Brendan DePaola overheard this altercation. Mr. DePaola testified that this altercation never happened.

Dennis Cross was interviewed and hired by Dee and Mike, not just Mike. In his role, Mr. Cross reviewed the financials with both Mike and Roger, not just Mike. Mr. Cross also testified that Mike said he could not sign checks because of the restitution he owed. However, before Dennis Cross became controller, Mike was an authorized signatory on the AFC bank accounts and signed checks. Once Mr. Cross became controller, Mike was removed as a signatory on AFC's bank accounts because he was

6

not working at AFC.  That was why Mike could/would not sign checks for AFC.  Mr. Cross also stated that Mike told him he had buried coins in kegs on his property as his retirement.  There is no witness or evidence that corroborates Mr. Cross' testimony/story.

The government has presented no substantial and corroborated evidence that anyone other than Dee Wilhite owns AFC.  After reviewing all the evidence and the witnesses' testimony, the government has failed to meet its initial burden of establishing that Mike Wilhite has an interest in AFC pursuant to Colorado state law by a preponderance of the evidence.

**MIKE WILHITE IS NOT THE OWNER OF AFC AND DEE IS NOT HIS NOMINEE**

The nominee theory has not been adopted by Colorado law as an avenue to seize property of a citizen.  However, if the Court believes the government has established that Michael Wilhite has an interest in AFC according to Colorado law and the nominee theory applies, the government must still prove that Dee Wilhite is the nominee of Michael Wilhite.  However, the government is unable to meet its burden because AFC is Dee Wilhite's company, has always been Dee Wilhite's company and she is not Michael's nominee

The Court may consider the 6 factors set out in *Holman* and *Spotts* when determining whether Dee Wilhite is the nominee of Michael Wilhite:

"1) whether inadequate or no consideration was paid by the nominee;
2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
3) whether there is a close relationship between the nominee and the transferor;
4) whether they failed to record the conveyance;
5) whether the transferor retained possession; and

7

> 6) whether the transferor continues to enjoy the benefits of the transferred property."

*Holman v. U.S.* 505 F.3d 1060, 1065 (10th Cir. 2007) Footnote 1, *Spotts v. U.S.,* 429 F.3d 248 (2005) citing *Porta-John of America, Inc. v. United States*, 4 F.Supp.2d 688, 701 (E.D.Mich.1998).

When reviewing the 6 factors and the evidence in this case, the government is unable to prove 5 of the 6 factors and therefore cannot establish that Dee Wilhite is the Michael's nominee.

**1.     Whether inadequate or no consideration was paid by the nominee.**  In *Holman*, Mrs. Holman had no assets or income of her own and therefore could not purchase the property on her own.  In this case, Mr. Wilhite was the one who had no assets, income or money of his own to either purchase or start a company in 1997. Mrs. Wilhite, in contrast to *Holman*, was the one with the established business, income, assets, and credit to start and finance a construction company. Additionally, Mrs. Wilhite borrowed money from her company, DW Support, and from her mother to start AFC. Both loans were repaid by AFC.  Dee also opened a line of credit for AFC in her name. Michael Wilhite contributed none of the money, assets or credit necessary to start AFC because he had none.  Before making a salary for six months with Mark Russell's company in 1997, Michael Wilhite went five years without any salary or money from Geoffrey Clement.  During those five years, Mrs. Wilhite financially supported Mr. Wilhite.

**2.     Whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property.**  In *Holman*, the asset in question was purchased after the IRS liens were

8

established.  In this case, Mrs. Wilhite started AFC 3 years *before* it was known by Mr. Wilhite, Mrs. Wilhite, or even decided by the government, that Mr. Wilhite would be indicted and owe restitution.  Although Mr. Wilhite was being looked into as a suspect regarding Mr. Clement's fraud scheme in 1997, he never told Dee of his involvement in the fraud or that he was a possible suspect because he was ashamed and embarrassed.  Michael Wilhite never received any money from Mr. Clement's dealings with the Australians and thus Michael did not believe that he would owe restitution. AUSA Brown had telephone conversations and correspondence with Mr. Wilhite's attorney regarding Mr. Wilhite's cooperation and immunity, with indictment only discussed if Mr. Wilhite did not cooperate. (Exh. V and Y) Mr. Wilhite was granted use immunity by Robert Brown on June 22, 1998.  Mr. Wilhite cooperated with the government throughout the investigation and prosecution of Mr. Clement.  Mr. Wilhite was a crucial witness against Mr. Clement and, as a result Mr. Wilhite was not indicted with Mr. Clement in his 1999 case.  During Mr. Wilhite's trial preparation for Mr. Clement's trial, it was discovered that Michael had forged the signature of the President of Merrill Lynch that was used to secure the final two loans from the Australians. (Exh. 2).  At that time, an agreement was reached with Mr. Wilhite, and the government filed a one-count indictment against him in 2000.  Mr. Wilhite pled guilty, was sentenced and ordered to pay restitution in 2001, almost 3 ½ years after Mrs. Wilhite started AFC.

As it relates to exercising control of the property, in *Holman*, Mr. Holman exercised control over the property, earned all the money, did all the negotiations and led all the transactions.  In this case, although Michael Wilhite managed the day-to-day operations of the company for a time, like Torin Jackson does now, Dee Wilhite has

9

SPRINGS/1546011.1

always earned the money, controlled the company (including the finances) and, made all the major decisions and negotiations (i.e., designating who might enter into contracts, authorizing those who can order supplies, and negotiating with banks and major purchases such as trucks and heavy equipment).

      3.    **Whether there is a close relationship between the nominee and the transferor.**  This is the one factor that government has proven as it relates to their argument under the nominee theory because as husband and wife, it is without question that a close relationship exists between Michael and Dee Wilhite.

      4.    **Whether they failed to record the conveyance.**  In this case, there has not been a record of the conveyance because AFC has always been Dee Wilhite's company, so no record of conveyance has ever been needed.  Indeed, Dee Wilhite specifically decided *not* to include Mr. Wilhite as a member/owner of AFC because of Mr. Wilhite's bad credit history, his lack of financial acumen, and because Dee wanted AFC to be a female-owned construction business.

      5.    **Whether the transferor retained possession.**  Although Michael Wilhite has acted in various capacities in relationship to his wife's business, Michael Wilhite has never had possession of AFC and still does not possess AFC.  While Mr. Wilhite stops by the company's offices at Dee's request, he has no possession of the company.

      6.    **Whether the transferor continues to enjoy the benefits of the transferred property.**  Dee Wilhite, not Michael Wilhite, continues to maintain control of all the benefits derived from ownership of AFC, including control of all the proceeds from the business, decision-making authority (including whether or not to sell AFC), and

all other benefits of ownership.  Mr. Wilhite, as Mrs. Wilhite's husband, enjoys some benefits of her income and contributions but no more than every other spouse.

The court in *Holman* held Mrs. Holman was not her husband's nominee even though there were facts supporting the nominee theory against Mrs. Holman. Therefore, the six factors in this case clearly show that Dee is the owner of AFC and is not Michael's nominee.

## **MIKE WILHITE DID NOT DEFRAUD THE GOVERNMENT BECAUSE AFC WAS AND IS SOLELY OWNED BY DEE WILHITE**

**"**The burden of establishing either a constructive or resulting trust is upon him who seeks its enforcement."  *Woodruff v. Clarke*, 262 P.2d 737, 128 Colo. 387 (1953) citing *Botkin v. Pyle*, 14 P.2d 187, 91 Colo. 221 (1932)

To establish a constructive or resulting trust, the government must prove the presence of fraud.

> "Fraud is never presumed, and, of course, it is not a matter of speculation; it must be clearly established if alleged.  A reading of the entire record in the present case fails to disclose any hint at fraud, because all of the transactions admittedly were in the open, and here we have a case not where the husband purchased the property and placed it in his wife's name, but where the property was purchased by the wife with her own funds, and the fact that the husband paid some part of the interest, which was an insignificant part of an amount due from him under his duty as a husband in support of his wife and family in the maintenance of a home does not warrant the trial court in assuming that he had an interest in the place in any extent whatever." *Woodruff*, at 394.

In our case, Dee Wilhite paid for AFC with her own funds, placed AFC in her own name and has conducted all AFC transactions in the open.  Michael Wilhite supported his wife's business by working for the company and helping it grow as all employees have done, for which Michael Wilhite was paid a salary until he left AFC in 2008. Even if

11

this Court believes the government's argument that some of Mr. Wilhite's money in 1997 went into starting AFC, not only was that money repaid but it is insufficient to establish fraud for a constructive trust pursuant to the Court's ruling in *Woodruff. Id.*

Furthermore, Mr. Corne testified that he conducted his own review of AFC and its ownership before taking them on as a client and he had no concerns regarding Dee's ownership of the company. In fact, the IRS completed an audit of AFC in 2006/2007 and reviewed all aspects of AFC including ownership and found no fraud.

Cindy Barker, AFC's bookkeeper, also testified that she has never suspected fraud regarding ownership of AFC. If she did, she would have left the company a long time ago. Dee Wilhite logs into AFC's Quickbooks account almost every day to keep an eye on the company's finances. Mrs. Barker calls Dee with any financial issues, not Mike. While Mrs. Barker hesitated when the Court asked her if Mike was the CEO, she never once testified that Mike was the owner of AFC. Being CEO or the individual who can answer questions about the business, installation or the workings of the company does not make that individual an owner. Mrs. Barker never hesitated when asked who the owner of the company is/was.

The government's sole argument that Michael and Dee are defrauding the government is that Michael stopped drawing a salary in 2008 but never stopped working for AFC. They speculate that Mike stopped drawing a salary because the government was starting to collect on the restitution he owed. As testified to by Mike and Dee Wilhite, the government did not contact Mike or AFC regarding his restitution or garnishment from 2005-2008, although they knew he was working at AFC. The government's own records corroborate Michael and Dee's testimony. (Exhibit R)

12

Mike's last paycheck from AFC was August 15, 2008. The government sent out their first inquiry to AFC about Mike's employment on August 28, 2008. (Exhibit 19) Mike could not have known that the government was going to start inquiring about his employment status before that letter was received by AFC because the government had made no attempts to contact Mike before then. Michael has not drawn a salary since 2008 because he is not working at AFC. While he stops in and visits with the employees and answers questions, he does not run the day-to-day operations.

Since 2008, the government has conducted six inquiries into Mr. Wilhite's employment and (alleged) ownership in AFC. (Exh R). Those inquiries occurred in 2004, 2008, 2009, 2011, 2012 and 2013 (the present inquiry). Each time, except this most recent time, the government and the AUSA assigned to the case did nothing further to collect on the restitution because they had no evidence of wrongdoing or fraud. The government, on three separate occasions, from 2004 to 2012, lowered the priority code related to their collection efforts of Michael Wilhite because they had no evidence of wrongdoing or fraud. They had the same evidence as this AUSA. There is no evidence of wrongdoing because Mike and Dee Wilhite have not done anything wrong.

## CONCLUSION

Mike Wilhite has done nothing wrong. Dee Wilhite has done nothing wrong. The government is trying to make Dee Wilhite pay for her husband's past crime. Don't let them do it. It is not right or just. Dee, as a woman pioneer in construction, started her own company and grew it into what it is today with the help of Mike and all the other employees. The government has failed to prove its case because Dee owns AFC and

13

they have not defrauded the government.  Mike does not own AFC or any majority share of the company.  The government presented no substantial and corroborated evidence that anyone other than Dee owns AFC because Dee has always owned AFC.

Respectfully submitted this 9th day of October, 2015.

SHERMAN & HOWARD L.L.C.

*s/ Richard F. Bednarski*
_____
Richard F. Bednarski, #31157
90 S. Cascade Ave., Suite 1500
Colorado Springs CO 80903
719-448-4084
rbednarski@shermanhoward.com
LAWYERS FOR DEFENDANT

15

## CERTIFICATE OF SERVICE

      I hereby certify that electronically filed the foregoing with the Clerk of Court using the CM/ECF e-filing, this 9th day of October, 2015, which will send notification of such filing to all counsel in this matter.

                                    *s/ Devon O. Ryan*

                                    _____