**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 00-cr-0504-CMA-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL D. WILHITE,

    Defendant.

---

**UNITED STATES' NOTICE AND MOTION FOR MONTHLY REPORTING**
_____

The United States files this notice of possible injunction violations and moves for the Court to modify the injunction and require Advanced Floor Concepts ("AFC") or the Wilhites to file monthly financial reports of AFC's operations while the case is pending. In support thereof, it states as follows:

1. On September 23, 2016 this Court entered an order that included the following injunction:

> "[P]ursuant to Colo. Rev. Stat. § 38-8-108(d)(1), that Mr. Wilhite, Mrs. Wilhite, and all other individuals are prohibited from directly or indirectly transferring, encumbering, concealing, or in any way disposing of AFC's assets or property in any form, until further order of this Court. The Court recognizes that AFC appears to be an ongoing business entity; as such, it is permitted to pay its vendors and employees **in the ordinary course of business**. However, Mr. and Mrs. Wilhite are on notice that the Court will scrupulously examine all payments made by AFC to determine whether they were made in the ordinary course of business." Doc. 121 at 29 (emphasis in original).

2. On September 26, 2016, undersigned counsel contacted Mr. Wilhite's attorney, Rick Bednarski, and Mrs. Wilhite's attorney, Scott Mikulecky, to confer on the

1

order and the case moving forward.    The attorneys indicated they needed to discuss the order with their clients, including the injunction.

3. On September 30, 2016, Mr. Mikulecky emailed undersigned counsel indicating that he and Mr. Bednarski met with the Wilhites on September 29, 2016 to discuss the order.

4. During the week of September 26th, the United States sent subpoenas requesting documents from several financial institutions used by the Wilhites and AFC, including their primary bank, American National Bank (ANB).[1]

5. The responsive documents show transactions that appear to violate the Court's injunction.[2]   Specifically:

   a. On October 27, 2016, after the Court injunction, AFC transferred $10,220 from its operating account to Colorado Precious Metals.   Ex. 1.

   b. On October 28, 2016, after the Court injunction, AFC transferred $26,500 to the **personal checking account** of Darla Wilhite, which is also held by ANB.   Ex. 2.   This transfer was separate and apart from

---

[1] The United States learned about the information detailed here through subpoena responses.    It would be overly burdensome to continue subpoenas every month to monitor the activity of AFC and the Wilhites.    Instead, AFC should provide the Court and the United States with information on a monthly basis, as requested in the Requests for Relief, *infra*.    Undersigned counsel has conferred with the Wilhites' attorneys on the content of these reports, and will continue to do so.

[2] Before the injunction, on September 6, 2016, AFC transferred $301,225 from its operating account to Colorado Precious Metals, a company through which the Wilhites and Yahab Foundation have purchased at least $525,000 in gold and silver coins since January 2013.    Mr. Wilhite signed for that transaction.    Although this activity occurred before the injunction, this substantial transfer of assets from AFC's operating account controlled by the Wilhites appears to be a fraudulent transfer and should not be overlooked. It demonstrates their continued intent to conceal assets.

Mrs. Wilhite's paychecks received as usual on October 7, 2016 and October 21, 2016.[3]  See Ex. 7 at p. 2 (Payroll Ledger).

6. The United States believes these transactions may be a) in violation of the injunction and/or b) not authorized by the injunction, requiring a modification. Specifically, the Court allowed AFC to "pay its vendors and employees **in the ordinary course of business**." Doc. 121 at 29 (emphasis in original). As to the transaction with Colorado Precious Metals, that company is neither a vendor nor an employee of AFC.[4] As to the distribution on October 28, 2016, it was transferred to Mrs. Wilhite's personal checking account, and was separate and apart from her employee salary.

7. The United States contacted opposing counsel regarding the post-order transactions on November 15, 2016. Mr. Mikulecky provided the following explanations for the transactions:

> a. As to the transfer to Colorado Precious Metals on October 27, 2016, "The transaction was a loan from AFC to DW Support which was repaid the next day . . . ." The email provided an attachment showing a purported check from DW Support to AFC in the amount of $10,220 on October 27, 2016.
>
> b. As to the transfer to the personal checking account of Mrs. Wilhite, "[t]he distribution was for the monthly payment of the ANB loan for AFC. AFC has been making the monthly payment to Mrs. Wilhite,

---

[3] Mrs. Wilhite continues to be a paid employee at AFC, earning approximately $8,780.80 a month through bi-weekly paychecks from the AFC Payroll Account at 1st Bank.  See Ex. 7.

[4] This was clearly established in the July 21, 2015 hearing during which the owner of Colorado Precious Metals, David Bayuk, testified about his many dealings with Mr. Wilhite. Doc. 67, 71.

3

      who in turn pays it to ANB, for many years since AFC and Mrs. Wilhite renegotiated the loan and ANB required the loan to be in Mrs. Wilhite's name. The payment, therefore, is to AFC's creditor and was made in the ordinary course of AFC's business."

    c. Although the United States requested that Mrs. Wilhite cease taking further monthly distributions, her attorneys did not respond to that request. Accordingly, it appears that Mrs. Wilhite will continue to take this distribution.

8. The Wilhites' explanation of the Colorado Precious Metals transaction is unconvincing. Specifically, it does not clarify why an unrelated third party was involved in a purported "loan" between the Wilhites' companies, nor how precious metal purchases are within the ordinary course of business for AFC, a construction company. Moreover, under the injunction, the Wilhites are not authorized to dispose of AFC's assets outside of payments to vendors or employees. This loan to another business is not contemplated by the injunction, especially because the purported borrower of AFC's funds (DW Support) is controlled by Mrs. Wilhite herself.

9. The Wilhites' explanation of the October 28, 2016 transaction is equally unconvincing. The loan Mrs. Wilhite paid from her personal account is not a business loan. Instead, this is a personal home equity loan that Mrs. Wilhite signed in her individual capacity on July 1, 2013. The history of the loan is as follows:

    a. On May 10, 2007, AFC was issued a commerical line of credit through ANB for $2,000,000 at an interest rate of 8.5%. *See* Ex. 3, Loan #

XXXXXXX701 ("Loan #701");[5]

b. On September 14, 2007, Mrs. Wilhite took out a mortgage on the Wilhites' residence for $985,000 at an interest rate of 6.25%.  *See* Ex. 4, Loan # XXXXXXX303 ("Loan #303"). On September 4, 2012, Mrs. Wilhite refinanced the mortgage and it was converted into a home equity loan in the amount of $702,859.48 at an interest rate of 3.75%. *See* Ex. 5 at pp. 1-2, Loan # XXXXXXX304 ("Loan #304") (refinancing Loan #303).

c. On July 1, 2013, Mrs. Wilhite renegotiated the terms of *both* Loan #701 (the commercial line of credit) and Loan #304 (the mortgage/home equity) into one large home equity loan, thus **combining AFC's line of credit and her personal liabilities**.   This manifested as a home equity loan in the amount of $1,510,000, with an interest rate of 3%, which Mrs. Wilhite signed in her individual capacity *only*.[6]  *See* Ex. 6 at pp. 3-4, Loan # XXXXXXX305 ("Loan #305") (refinancing Loan #304 and Loan #701);

d. Based on subpoenaed documents, no other loans exist between the Wilhites, AFC, and ANB;

e. Mrs. Wilhite has been making payments on Loan #305 from her personal checking account on a monthly basis.  *See* Ex. 6 at pp. 5-7. Her practice has been to make these payments with distributions she

---

[5] As further detailed in the attached Exhibit, Loan #701 went through several modifications over the years.  Ex. 3 at 5.  However, it did not change loan numbers.
[6] As is the Wilhites' pattern, Mr. Wilhites signature is not on the loan documents.

5

    takes from AFC's operating account.  She has paid down the loan significantly with those distributions, often paying much more than the payment due per month.  *Id.*  Indeed, when the United States sent its first subpoena to AFC on April 1, 2014, the balance of Loan #305 was $1,334,729.38.  Ex. 6 at p. 5.  As of November 7, 2016, the balance is $498,236.38, representing payments of $836,493 in that timeframe.  *Id.* at pp. 5-7.

10. At trial and without providing full documentation, Mrs. Wilhite testified as to the home equity loan.  Doc. 98 at 151-153.  Mrs. Wilhite testified that AFC was struggling in the recession, and she saved it through this large cash infusion, for which the Wilhite residence was collateral.[7]  *Id.*  She failed to state, however, that this loan also **absorbed her personal mortgage**.  Ex. 6 at pp. 3-4.

11. The Wilhites put up their home to save AFC, their company.  They have been paying down this home equity loan through member distributions, often significantly higher than the amount due each month.  Indeed, since receiving the United States' first subpoena in April 2014, Mrs. Wilhite has transferred $836,493 in distributions from AFC to the home equity loan balance.  Ex. 6 at pp. 5-7.  The Wilhites are now subject to an injunction, and they should not be able to take distributions of $26,500 a month, on top of Mrs. Wilhite's salary of $8,780, to rapidly pay down this personal liability, especially in light of the fact that Mr. Wilhite has not made a voluntary payment toward

---

[7] Although Mrs. Wilhite testified that the home equity loan occurred around December 2009, doc. 98 at 151-153, it appears from ANB's documents that the event she was referring to was actually one of the commercial line of credit modification agreements for loan #701.  Ex. 3 at pp. 5-12.  The home equity conversion of both the commmercial and personal loans occurred on July 1, 2013.  Ex. 6 at pp. 3-4.

6

his restitution since his supervised release ended in 2004.

Accordingly, the United States seeks the following relief:

A. To alleviate the discovery burden of monitoring the Wilhites' activities, the Court should issue an order requiring Mr. and Mrs. Wilhite to file under oath monthly reports with the Court detailing AFC's operations and financial activity for the preceding month, including all income, expenses, transfers, and cash on hand;

B. The Court modify its injunction to include the following language: "AFC is allowed to pay its vendors, employees, and creditors in the ordinary course of business. However, it is only permitted to make such payments to unrelated third parties. No payments shall go to DW Support, Yahab Foundation, the Cowboy Church,[8] or any other entity in which the Wilhites have any interest, nor any other individual who is a relative or insider."

C. The Court should grant such further relief as the Court deems just and proper under the law and facts of this case, including issuing an order to show cause as to why the transfer to Colorado Precious Metals and Mrs. Wilhite's checking account were not in contempt of its injunction, and reversing the same.

Dated: November 21, 2016

---

[8] In recent years, the Wilhites bought land and built a church they refer to as the "Cowboy Church" in Westcliffe, Colorado. The subpoenaed documents also revealed they intend to build another structure on the land as a school, possibly through the funds held by Yahab Foundation.

Respectfully submitted,

ROBERT C. TROYER
Acting United States Attorney

s/ Elizabeth M. Froehlke
ELIZABETH M. FROEHLKE
JUAN G. VILLASEÑOR
Assistant United States Attorneys
United States Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0126
E-mail: elizabeth.froehlke@usdoj.gov

**CERTIFICATE OF SERVICE (CM/ECF)**

   I hereby certify that on November 21, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

rbednarski@shermanhoward.com
Smikulec@sah.com

and I hereby certify that on the same date as above, I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated above the nonparticipant's name:

None.

                s/Elizabeth M. Froehlke
                United States Attorney's Office