| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ▇▇▇▇701 | Advanced Floor Concepts, LLC | ▇2557 | 05/10/07 | DG |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $2,000,000.00 | Wall Street Journal Prime plus 0.250% | 8.5% | 05/10/08 | Commercial |

Creditor Use Only

# PROMISSORY NOTE
(Commercial - Revolving Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is May 10, 2007. The parties and their addresses are:

**LENDER:**
   **AMERICAN NATIONAL BANK**
   102 North Cascade Avenue
   P.O. Box 9250
   Colorado Springs, Colorado  80932
   Telephone: (719) 473-0111

**BORROWER:**
   **ADVANCED FLOOR CONCEPTS, LLC**
   a Colorado Limited Liability Company
   17 S. Gilbert Street #102
   Castle Rock, Colorado 80104

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

   **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

   **B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   **C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

   **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   **E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

   **F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum outstanding principal balance of **$2,000,000.00 (Principal)**, plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

All advances made will be made subject to all other terms and conditions of the Loan.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **8.5 percent (Interest Rate)** until May 11, 2007, after which time it may change as described in the Variable Rate subsection.

   **A. Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at 21.000 percent until paid in full.

   **B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

   **C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Colorado usury laws under Colo. Rev. Stat. § 5-12-103.

   **D. Accrual.** Interest accrues using an Actual/360 days counting method.

   **E. Variable Rate.** The Interest Rate may change during the term of this transaction.

      **(1) Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the nation's 30 largest banks known as the Wall Street Journal Prime Rate.

      The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

      **(2) Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change May 11, 2007 and daily thereafter.

      **(3) Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 0.250 percent. The result of this calculation will be rounded to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

      **(4) Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

Advanced Floor Concepts, LLC
Colorado Promissory Note
CO/4XXXXvcox▇▇▇▇▇▇▇007N          ©1996 Bankers Systems, Inc., St. Cloud, MN  *Experʇ*          Initials ▇▇
                                                                                                    Page 1


GOVERNMENT
EXHIBIT
3
00-CR-504

4. **ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

5. **GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

6. **PAYMENT.** I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning June 10, 2007, then on the same day of each month thereafter. A final payment of the entire unpaid outstanding balance of Principal and interest will be due May 10, 2008.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

7. **PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

8. **LOAN PURPOSE.** The purpose of this Loan is for working capital support for growth and startup cost.

9. **ADDITIONAL TERMS.**
IMPROVED REAL ESTATE: If this note is secured by improved real property, and should the real property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

10. **SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Security Agreement - Advanced Floor Concepts, LLC | Advanced Floor Concepts, LLC |

11. **DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if I am in default under this Agreement, I may not sell the inventory portion of the Property even in the ordinary course of business.

12. **WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

   A. **Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

   (1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

   (2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

   (3) You may release, substitute or impair any Property securing this Note.

   (4) You, or any institution participating in this Note, may invoke your right of set-off.

   (5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

   (6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

   (7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

   B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

13. **COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

14. **APPLICABLE LAW.** This Note is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Colorado, unless otherwise required by law.

15. **JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

16. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

6/18/2008

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**20. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**21. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:
Advanced Floor Concepts, LLC
By /s/ Darla Dee Wilhite  managing/member DD
Daria Dee Wilhite, ~~President~~ managing/member

LENDER:
American National Bank
By /s/ Daniel R. Giovanini
Daniel R. Giovanini, Senior Vice President

APPENDIX: FEES AND CHARGES

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid, these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

   **Loan.** A(n) Loan fee of $5,000.00 payable from separate funds on or before today's date.

Advanced Floor Concepts, LLC
Colorado **Promissory Note**
CO/4XXXXvcox            007N          ©1996 Bankers Systems, Inc., St. Cloud, MN  *Exṗereṅ*

Initials ____
Page 4

6/18/2008

6/20/2012

### THIRD LOAN MODIFICATION AND EXTENSION AGREEMENT

THIS THIRD LOAN MODIFICATION AND EXTENSION AGREEMENT (this "Third Extension Agreement") is made and entered into effective the 6th day of June, 2012 (the "Effective Date"), by and among REALTY MANAGEMENT GROUP, LLC, a Colorado Limited Liability Company, successor to AMERICAN NATIONAL BANK, a national banking association ("Lender"), and ADVANCED FLOOR CONCEPTS, LLC ("Borrower"), MICHAEL D. WILHITE, DARLA D. WILHITE, and STEEL DECK SUPPLY, INC. ("Steel Deck Supply"). Michael D. Wilhite, Dana D. Wilhite, and Steel Deck Supply are referred to collectively in this Third Extension Agreement as the "Guarantors."

### RECITALS

A. As of June 6, 2012, Borrower is indebted to Lender in the amount of $1,024,829.16, exclusive of accrued interest, fees and costs, under Loan #1234255701, pursuant to the terms of loan documents between Borrower and Lender (the "Loan").

B. On or about December 30, 2009, Lender and Borrower entered into a Loan Modification and Extension Agreement. Borrower failed to perform its obligations under that agreement.

C. On or about May 3, 2010, Lender and Borrower entered into a Second Loan Modification and Extension Agreement.

D. Concurrently with the execution of this Third Extension Agreement, the Borrower will execute the following modified loan documents to modify the Loan along with any other documents necessary to effect the intent of the parties (the "Modified Loan Documents"):

    1. Commercial Loan Agreement dated June 6, 2012;

    2. Debt Modification Agreement dated June 6, 2012.

E. Closing on this Third Extension Agreement and execution of the Modification shall occur on June 6, 2012 (the "Closing").

### AGREEMENT

NOW THEREFORE, for and in consideration of the recitals, payments, releases, promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties, each intending to be legally bound, hereby agree as follows:

1. <u>Incorporation of Recitals</u>. The foregoing recitals are material to this Third Extension Agreement and are incorporated herein by this reference.

2. <u>New Maturity Date</u>. All principal, accrued interest, and other amounts owed under the Loan will be due and payable on May 3, 2013 (the "Maturity Date").



3. <u>Guarantors</u>. Guarantors have unconditionally, jointly and severally, guaranteed payment of all of the amounts owed under the Loan. Michael D. Wilhite, Darla D. Wilhite, and Steel Deck Supply each previously executed Guaranty agreements in connection with this Loan. These Guaranty agreements remain in full force and effect.

4. <u>Security</u>.

a. <u>Assignment of Related Entity and Employee Loans</u>. On May 10, 2007, Borrower executed a Security Agreement (the "Borrower Security Agreement") granting to Lender a security interest in, among other things, its accounts receivable and other rights to payment. Borrower has loaned money to other entities in which it or the Guarantors hold an ownership interest and to its employees (collectively, the "Insider Loans"). A list of the Insider Loans was attached to the Extension Agreement executed on December 30, 2009 as Exhibit A. The Borrower represents that no other Insider Loans have been made since December 30, 2009. The Borrower Security Agreement provides Lender with a security interest in the Insider Loans. Borrower agrees that all payments on the Insider Loans shall be made to Lender, and Lender shall apply the amounts it receives from the Insider Loans toward the amounts owed by Borrower under the Loan.

b. <u>Other Security</u>. Borrower and Guarantors have pledged and assigned other security to Lender. All prior security agreements shall remain in full force and effect.

5. <u>Principal Paydown</u>. Monthly principal and interest payments shall be required as provided in the Modified Loan Documents. Interest shall accrue on the unpaid principal balance of the Loan at the rate of 9% per annum. Provided Borrower maintains Borrower's Primary Deposit Account (see paragraph 11 below) with Lender, Borrower shall only be required to make monthly interest payments based on an interest rate of Wall Street Journal Prime plus 3% with a pay rate floor of 7.5% per annum (the "Pay Rate"). The Modified Loan Documents indicate that the interest rate under the loan is 7.5% per annum. This 7.5% rate is a pay rate, and Borrower agrees that interest shall accrue on the loan at the rate of 9% per annum, and all interest accrued must be paid to Lender in order for Borrower to satisfy the amount owed to Lender under the Loan. All unpaid principal and interest (accrued at the rate of 9% per annum) will be due and payable upon the earlier to occur of: Maturity Date, payoff, or Borrower's default.

6. <u>Financial Reporting</u>.

a. Within thirty (30) days of the end of each month, Borrower shall provide the following information/documents:

    i. Financial Statement;

    ii. Balance Sheet;

    iii. Statement of Cashflows;

iv. Accounts receivable aging report;

v. Borrowing base certificate.

b. Steel Deck Supply is no longer required to provide Lender with complete financial statements.

c. All information provided by Borrower shall be current through the end of the month preceding the reporting.

d. Within ten (10) days of the date of Lender's request, Guarantors shall provide Lender with complete personal or other financial statements as requested.

e. Borrower and Guarantors shall each provide any tax returns filed with the IRS or Colorado Department of Revenue to Lender within ten (10) days of filing same.

7. <u>Financial and Capital Restrictions</u>.

a. The following actions shall be prohibited by Borrower and Guarantors without the prior written consent of the Lender:

i. Payments to any owner or officer of Borrower or Steel Deck Supply in excess of $12,000 in any month;

ii. Distributions of profits that exceed twenty percent (20%) of Borrower's taxable net income, but in any event no more than fifty thousand dollars ($50,000). (Borrower shall be required to immediately report to Lender any distribution of profit made to its owners. Borrower shall be in default under the Loan if the Lender determines that Borrower's annual distributions exceed twenty percent (20%) of Borrower's taxable net income or more than fifty thousand dollars ($50,000). Lender's determination of Borrower's taxable net income for the purposes of this paragraph 7 shall not be subject to challenge unless Lender's determination is not supportable in good faith.);

iii. Loans or advances to owners, officers, or employees;

iv. Loans or advances to any entity in which: (1) the Guarantors or any other owner of the Borrower holds an ownership interest, or (2) Borrower holds an ownership interest;

v. Cumulative annual charitable contributions that exceed one percent (1%) of Borrower's taxable net income as determined by Lender;

vi. To pledge, convey, assign, hypothecate, or otherwise transfer any interest in Borrower's stock;



6/20/2012

vii. To issue any stock or other equity instrument providing an ownership interest or the right to obtain an ownership interest in the Borrower; and

viii. To borrow any funds or guaranty any other indebtedness.

b. Lender will evaluate any request by Borrower to take actions under subparagraphs 7. a. vi, vii, or viii to determine whether such action will improve Borrower's financial position or impede the position of Lender. So long as the Lender determines that Borrower's action will improve Borrower's financial position and not adversely impact Borrower's ability to repay Lender, Lender will not unreasonably withhold its consent to any request by Borrower to take actions under subparagraphs 7. a. vi, vii, or viii.

8. **Right to Appointment of Receiver.** Upon default of Borrower under the terms of the Modified Loan Documents or this Third Extension Agreement, Lender or its assigns shall be entitled to the appointment of a receiver for the assets pledged to Lender pursuant to the Steel Deck Supply Security Agreement, the Borrower Security Agreement, and any other security agreement executed by Borrower or Steel Deck Supply to secure payment of the Loan; and shall be entitled thereto as a matter of right without regard to the solvency or insolvency of Borrowers, and without regard to the value of the property serves as collateral for the Loan. Such receiver may be appointed by any Court of competent jurisdiction upon ex parte application and without notice - notice being hereby expressly waived.

9. Default.

a. **Events of Default.** In addition to the events of default defined in the Modified Loan Documents, the following shall constitute an event of default under the Loan provided Borrower does not cure the default within ten (10) days following the occurrence of an event of default, which time period shall begin to run without the requirement of notice:

i. Breach of any provision of this Third Extension Agreement;

ii. Default by Borrower under any loan with any other lender; and

iii. Default under the provisions of the Modified Loan Documents.

b. **Remedies in the Event of Default.** In the event of a default under any of the Modified Loan Documents or this Third Extension Agreement:

i. all remedies outlined in the Modified Loan Documents, and prior Loan documents, or any documents incorporated by reference in the Modified Loan Documents shall be available to Lender;

ii. default interest shall immediately accrue without notice at the default rate of twenty eight percent (28%) per annum; and

4



6/20/2012

          iii. Lender shall be entitled to seek appointment of a receiver as set forth in paragraph 8 above.

      10. Representations and Warranties of Borrower. Borrower and Guarantors represent and warrant that all information provided to Lender is accurate as of the date the information was provided and all information that Borrower and Guarantors will provide in the future will be accurate. Borrower and Guarantors are not aware of any information that would materially impact Lender's evaluation of its decision to extend credit to Borrower. Borrower and Guarantors acknowledge that Lender has relied on these representations and warranties in entering into this Third Extension Agreement and the Modified Loan Documents. Failure by Borrower or Guarantors to provide accurate information to Lender at any time shall be considered an event of default under the terms of this Third Extension Agreement.

      11. Borrower Must Maintain its Primary Deposit Account with ANB Bank (the "Bank"). Borrower shall maintain its primary deposit account ("Borrower's Primary Deposit Account") with Bank. Borrower's Primary Deposit Account shall be defined as an account where Borrower deposits no less than eighty percent (80%) of the revenues it receives from any source. Borrower shall be required to provide all information requested by Lender to verify that Borrower maintains its primary deposit account with Bank. In the event Borrower fails to maintain its primary deposit account with Lender, the minimum interest rate payable by Borrower under the Loan will be nine percent (9%) per annum retroactive to the date when Borrower first breached its obligations under this paragraph.

      12. Waiver and Release by Borrower and Guarantors. In consideration of the promises and covenants contained in this Third Extension Agreement, the adequacy of which is hereby acknowledged and confessed by Borrower and Guarantors, each does hereby irrevocably release, acquit, and forever discharge Lender and its officers, employees, agents, predecessors, successors, assigns, and insurers of and from any and all past and present rights, duties, obligations, liabilities, claims, demands, controversies, agreements, damages, causes of action, expenses, costs, attorneys fees, penalties, interest, and compensations of whatsoever kind and nature, whether known or unknown and whether existing in law or in equity, arising out of or in any way related to the Loan. Borrower and Guarantors also release Lender and predecessors from any past claims for negligence, breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligent and fraudulent misrepresentation, and any other theory of lender liability. Borrower and Guarantors agree that Lender and its predecessors have performed their obligations under all prior loan agreements between the parties. Nothing contained in this Third Extension Agreement shall release any claims arising out of the future breach of this Third Extension Agreement or the Modified Loan Documents. Lender shall not have any obligation to comply with any request of Borrower that is not explicitly required in this Third Extension Agreement or the Modified Loan Documents. Borrower and Guarantors waive and release Lender and predecessor from liability for any and all claims or liabilities based on Lender's exercise of its discretion under this Third Extension Agreement.

      13. Indemnification by Borrower and Guarantors. Borrower and Guarantors hereby each agree, with respect to their respective interest, to defend, indemnify and hold harmless Lender and its officers,



6/20/2012

employees, agents, predecessors, successors, assigns, and insurers (the "Indemnified Parties"), from and against all liabilities, claims, demands, judgments, causes of action, and expenses, including but not limited to court costs and attorney fees, which are in any manner related to any claim brought by any person or entity, whether pursued judicially or in any other forum, claiming against any of the Indemnified Parties in connection with any work performed or supplies provided in order to generate accounts receivable or other assets that secure the Loan. When applicable, Borrower and Guarantors shall each at its sole expense investigate, handle, respond to and, by counsel acceptable to Lender, provide defense for and defend against any such liability, claims, demands, and causes of action.

14. <u>Binding Effect</u>. The parties agree that this Third Extension Agreement shall be binding on their agents, employees, principals, heirs, executors, administrators, insurers, successors, assigns, and subrogees.

15. <u>Authority</u>. Each party to this Third Extension Agreement expressly warrants that it has authority to enter into this Third Extension Agreement and further expressly warrants that the signatory for such party on this Third Extension Agreement has the requisite authority required pursuant to applicable stated federal financial institution regulations and laws to bind that party to the terms of this Third Extension Agreement.

16. <u>Terms Contractual</u>. Each party agrees that no promise, inducement, or agreement not herein expressed has been made to them or their attorneys; that this Third Extension Agreement, the original loan documents, and the Modified Loan Documents contain the entire terms of the agreement between the parties; that the terms are contractual and not a mere recital; and that this document shall be interpreted under the laws of the State of Colorado. Borrower and Guarantors agree that as a successor to a regulated financial institution, Lender qualifies as a "Creditor" under C.R.S. § 38-10-124, and the Loan, the Modified Loan Documents, and all other documents related to the Loan meet the definition of a "Credit Agreement" pursuant to C.R.S. § 38-10-124. Borrower and Guarantors agree that Lender shall not be required to fulfill any promise or be responsible to Borrower or Guarantors for any duty that is not expressed in this Third Extension Agreement, the Modified Loan Documents, or other any other Loan documents. Except as provided in this Third Extension Agreement or in the Modified Loan Documents, the original documentation for the Loans as previously modified and documents associated with the Loans as previously modified shall remain in full force and effect. In the event of a conflict between the provisions of the Modified Loan Documents and the original documentation for the Loans, the Modified Loan Documents shall control. In the event of a conflict between the provisions of this Third Extension Agreement and the provisions of the Modified Loan Documents, the provisions of this Third Extension Agreement shall control.

17. <u>Acknowledgment of Counsel</u>. The undersigned declare that they have fully and carefully read the foregoing Third Extension Agreement, understand the content thereof, and have signed the same as their own free act. The undersigned also declare that they have sought and received any necessary advice and explanation from their attorneys.

6



6/20/2012

18. Assignment. Borrower's and Guarantors' rights, obligations, or duties under this Third Extension Agreement and the Modified Loan Documents may not be assigned in whole or in part without the prior written consent of Lender. Lender retains the absolute right to assign any or all of its rights and obligations under Loans.

19. Modifications. This Third Extension Agreement and any of the provisions contained herein may not be amended, waived, discharged or terminated other than by means of a written instrument signed by the party against whom enforcement of the amendment, waiver, discharge or termination is sought.

20. Cooperation. Borrower and Guarantors agree to execute any other documents necessary to carry out the intent of this Third Extension Agreement.

21. Governing Law; Venue; Waiver of Jury Trial. This Third Extension Agreement shall be construed in accordance with the substantive laws of the State of Colorado. Venue for any action concerning this Third Extension Agreement shall be in the El Paso County, Colorado, District Court. Borrower and Guarantors waive the right to a trial by jury for all of their disputes with Lender related in any manner to the Loan, including, but not limited to, any dispute related to this Third Extension Agreement, the Modified Loan Documents, or any other Loan Documents.

22. Severability. If any provision of this Third Extension Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not be affected or impaired thereby.

23. Headings. The headings of the various paragraphs contained herein are for convenience and reference only and shall not affect the meaning or construction of any of the provisions of this Third Extension Agreement.

[Signature Page Follows]

7



6/20/2012

IN WITNESS WHEREOF, this Third Extension Agreement is executed by the parties hereto as of the day and year first above written.

LENDER:

REALTY MANAGEMENT GROUP, LLC,
a Colorado Limited Liability Company

By: Sturm Group, Inc., its Manager

By: _____
John K. Fox, Chief Financial Officer

BORROWER:

ADVANCED FLOOR CONCEPTS, LLC,
a Colorado limited liability company

By: _____
Its: Manager
Name: Darla Dee Wilhite

GUARANTORS:

STEEL DECK SUPPLY, INC.,
a Colorado corporation

By: _____
Its: President
Name: Steel Deck Supply, Inc

_____
DARLA D. WILHITE, Individually

_____
MICHAEL D. WILHITE, Individually

8

Print

Page 1 of 5

(91) RMG SHADOW NOTES ▮▮▮▮701  
Printed by: LISA MILLS 01

ANB BANK

3/20/2014 9:08:06 AM  
Reporting Institution: 1

**Note ▮▮▮▮701 - ADVANCED FLOOR CONCEPTS LLC**

| | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ⊞ ADVANCED FLOOR CONCEPTS LLC<br>🔸 599 TOPEKA WAY STE 400<br>   CASTLE ROCK CO 80109 | Owner/Signer | | ********** | EIN **-******* |

Additional Relationships  
Tax Name: ADVANCED FLOOR CONCEPTS LLC

## Loan To Date

| Date | Description | Transaction Amount | Principal | Interest | Principal Balance |
|---|---|---|---|---|---|
| May 10, 2007 | Original Rate | Interest Rate: | 8.5000% | | |
| May 14, 2007 | NEW NOTE ADVANCE | $824,122.10 | $824,122.10 | | $824,122.10 |
| May 14, 2007 | PRINCIPAL ADVANCE | $90,579.44 | $90,579.44 | | $914,701.54 |
| Jun 08, 2007 | Payment - Extra To Principal | $25,831.22 | $20,000.00 | $5,831.22 | $894,701.54 |
| Jul 03, 2007 | PRINCIPAL ADVANCE | $125,000.00 | $125,000.00 | | $1,019,701.54 |
| Jul 11, 2007 | Payment - Extra To Principal | $26,328.01 | $20,000.00 | $6,328.01 | $999,701.54 |
| Jul 27, 2007 | PRINCIPAL ADVANCE | $100,000.00 | $100,000.00 | | $1,099,701.54 |
| Aug 10, 2007 | Payment - Extra To Principal | $27,528.57 | $20,000.00 | $7,528.57 | $1,079,701.54 |
| Sep 06, 2007 | Payment - Extra To Principal | $48,233.37 | $40,000.00 | $8,233.37 | $1,039,701.54 |
| Sep 18, 2007 | Rate Change | Interest Rate: | 8.0000% | | |
| Oct 10, 2007 | Payment - Extra To Principal | $27,009.08 | $20,000.00 | $7,009.08 | $1,019,701.54 |
| Oct 31, 2007 | Rate Change | Interest Rate: | 7.7500% | | |
| Nov 09, 2007 | Payment - Extra To Principal | $27,024.61 | $20,000.00 | $7,024.61 | $999,701.54 |
| Nov 14, 2007 | PRINCIPAL ADVANCE | $160,000.00 | $160,000.00 | | $1,159,701.54 |
| Dec 07, 2007 | Payment - Extra To Principal | $27,276.82 | $20,000.00 | $7,276.82 | $1,139,701.54 |
| Dec 11, 2007 | Rate Change | Interest Rate: | 7.5000% | | |
| Jan 02, 2008 | Principal Payment | $20,000.00 | $20,000.00 | | $1,119,701.54 |
| Jan 10, 2008 | Payment - Extra To Principal | $22,355.56 | $15,000.00 | $7,355.56 | $1,104,701.54 |
| Jan 22, 2008 | Rate Change | Interest Rate: | 6.7500% | | |
| Jan 30, 2008 | Rate Change | Interest Rate: | 6.2500% | | |
| Feb 11, 2008 | Payment - Extra To Principal | $16,663.90 | $10,000.00 | $6,663.90 | $1,094,701.54 |
| Mar 10, 2008 | Payment - Extra To Principal | $20,344.48 | $15,000.00 | $5,344.48 | $1,079,701.54 |
| Mar 18, 2008 | Rate Change | Interest Rate: | 5.5000% | | |
| Apr 10, 2008 | Payment - Extra To Principal | $45,293.53 | $40,000.00 | $5,293.53 | $1,039,701.54 |
| Apr 14, 2008 | PRINCIPAL ADVANCE | $75,000.00 | $75,000.00 | | $1,114,701.54 |
| Apr 30, 2008 | Rate Change | Interest Rate: | 5.2500% | | |
| May 09, 2008 | Payment - Extra To Principal | $15,063.21 | $10,000.00 | $5,063.21 | $1,104,701.54 |
| May 29, 2008 | Rate Change | Interest Rate: | 5.2500% | | |
| May 29, 2008 | Note Renewal | $0.00 | | | $1,104,701.54 |
| Jun 11, 2008 | Payment - Extra To Principal | $9,915.28 | $5,000.00 | $4,915.28 | $1,099,701.54 |
| Jun 27, 2008 | PRINCIPAL ADVANCE | $175,000.00 | $175,000.00 | | $1,274,701.54 |
| Jul 10, 2008 | Payment - Extra To Principal | $9,811.93 | $5,000.00 | $4,811.93 | $1,269,701.54 |
| Jul 31, 2008 | PRINCIPAL ADVANCE | $50,000.00 | $50,000.00 | | $1,319,701.54 |
| Aug 11, 2008 | Payment - Extra To Principal | $16,071.87 | $10,000.00 | $6,071.87 | $1,309,701.54 |
| Sep 10, 2008 | Payment - Extra To Principal | $15,995.32 | $10,000.00 | $5,995.32 | $1,299,701.54 |

(91) RMG SHADOW NOTES            ANB BANK                          3/20/2014 9:08:06 AM
███ 701
Printed by: LISA MILLS 01                                          Reporting Institution: 1

| Date | Description | Transaction Amount | Principal | Interest | Principal Balance |
|---|---|---|---|---|---|
| Sep 24, 2008 | PRINCIPAL ADVANCE | $110,000.00 | $110,000.00 | | $1,409,701.54 |
| Sep 29, 2008 | PRINCIPAL ADVANCE | $200,000.00 | $200,000.00 | | $1,609,701.54 |
| Sep 30, 2008 | PRINCIPAL ADVANCE | $75,000.00 | $75,000.00 | | $1,684,701.54 |
| Oct 08, 2008 | Rate Change | Interest Rate: | 4.7500% | | |
| Oct 10, 2008 | Payment - Extra To Principal | $10,942.85 | $5,000.00 | $5,942.85 | $1,679,701.54 |
| Oct 22, 2008 | PRINCIPAL ADVANCE | $75,000.00 | $75,000.00 | | $1,754,701.54 |
| Oct 30, 2008 | Rate Change | Interest Rate: | 4.2500% | | |
| Oct 30, 2008 | PRINCIPAL ADVANCE | $125,000.00 | $125,000.00 | | $1,879,701.54 |
| Nov 10, 2008 | Payment - Extra To Principal | $17,441.84 | $10,000.00 | $7,441.84 | $1,869,701.54 |
| Dec 11, 2008 | Regular Payment | $6,516.10 | $0.00 | $6,516.10 | $1,869,701.54 |
| Dec 11, 2008 | Principal Payment | $10,000.00 | $10,000.00 | | $1,859,701.54 |
| Dec 16, 2008 | Rate Change | Interest Rate: | 3.5000% | | |
| Jan 09, 2009 | Payment - Extra To Principal | $5,838.57 | $0.00 | $5,838.57 | $1,859,701.54 |
| Feb 10, 2009 | Regular Payment | $5,604.93 | $0.00 | $5,604.93 | $1,859,701.54 |
| Mar 10, 2009 | Payment - Extra To Principal | $30,062.52 | $25,000.00 | $5,062.52 | $1,834,701.54 |
| Apr 10, 2009 | Payment - Extra To Principal | $5,529.58 | $0.00 | $5,529.58 | $1,834,701.54 |
| May 08, 2009 | Payment - Extra To Principal | $45,351.21 | $40,000.00 | $5,351.21 | $1,794,701.54 |
| Jun 15, 2009 | Interest Payment | $5,575.73 | | $5,575.73 | $1,794,701.54 |
| Sep 29, 2009 | Rate Change | Interest Rate: | 8.5000% | | |
| Sep 29, 2009 | Note Renewal | $0.00 | | | $1,794,701.54 |
| Oct 01, 2009 | ACCRUAL AS OF 5/10/09 @ 8.5% LESS PAYMENT | $54,596.62 | | $54,596.62 | $1,794,701.54 |
| Oct 06, 2009 | Interest Payment | $54,596.62 | | $54,596.62 | $1,794,701.54 |
| Nov 01, 2009 | Rate Change | Interest Rate: | 9.0000% | | |
| Nov 10, 2009 | APPRAISAL REVIEW FEE | $75.00 | | | $1,794,701.54 |
| Nov 10, 2009 | APPRAISAL FEE | $500.00 | | | $1,794,701.54 |
| Nov 20, 2009 | Interest Waived (Manual) | $19,193.33 | | $19,193.33 | $1,794,701.54 |
| Nov 20, 2009 | Regular Payment | $13,374.21 | $0.00 | $13,374.21 | $1,794,701.54 |
| Dec 30, 2009 | Rate Change | Interest Rate: | 9.0000% | | |
| Dec 30, 2009 | Principal Payment | $75,000.00 | $75,000.00 | | $1,719,701.54 |
| Dec 30, 2009 | Interest Payment | $26,551.74 | | $26,551.74 | $1,719,701.54 |
| Dec 30, 2009 | Note Renewal | $0.00 | | | $1,719,701.54 |
| Jan 19, 2010 | LEGAL FEES | $2,066.25 | | | $1,719,701.54 |
| Jan 19, 2010 | AUDIT FEE | $4,400.00 | | | $1,719,701.54 |
| Jan 22, 2010 | Rate Change | Interest Rate: | 21.0000% | | |
| Feb 08, 2010 | LEGAL FEE PAYMENT | $2,066.25 | | | $1,719,701.54 |
| Mar 16, 2010 | LEGAL FEES | $157.50 | | | $1,719,701.54 |
| Mar 16, 2010 | LEGAL FEES | $787.50 | | | $1,719,701.54 |
| May 03, 2010 | Rate Change | Interest Rate: | 9.0000% | | |
| May 03, 2010 | Note Renewal | $0.00 | | | $1,719,701.54 |
| May 07, 2010 | Interest Waived (Manual) | $59,182.78 | | $59,182.78 | $1,719,701.54 |
| May 07, 2010 | PAYMENT FOR APPRAISAL REV FEE | $75.00 | | $75.00 | $1,719,701.54 |
| May 07, 2010 | PAYMENT FOR APPRAISAL FEE | $500.00 | | $500.00 | $1,719,701.54 |
| May 07, 2010 | PAYMENT FOR LEGAL FEES | $945.00 | | $945.00 | $1,719,701.54 |
| May 07, 2010 | PAYMENT FOR AUDIT FEE | $4,400.00 | | $4,400.00 | $1,719,701.54 |
| May 07, 2010 | Interest Payment | $52,000.00 | | $52,000.00 | $1,719,701.54 |
| May 27, 2010 | Principal Payment | $17,876.63 | $17,876.63 | | $1,701,824.91 |

| (91) RMG SHADOW NOTES ▮▮▮701 | | ANB BANK | | 3/20/2014 9:08:06 AM | |
|---|---|---|---|---|---|
| Printed by: LISA MILLS 01 | | | | Reporting Institution: 1 | |
| Date | Description | Transaction Amount | Principal | Interest | Principal Balance |
| May 27, 2010 | Interest Payment | $8,598.51 | | $8,598.51 | $1,701,824.91 |
| Jun 30, 2010 | Principal Payment | $13,970.21 | $13,970.21 | | $1,687,854.70 |
| Jun 30, 2010 | Interest Payment | $12,504.93 | | $12,504.93 | $1,687,854.70 |
| Jul 30, 2010 | Principal Payment | $15,926.05 | $15,926.05 | | $1,671,928.65 |
| Jul 30, 2010 | Interest Payment | $10,549.09 | | $10,549.09 | $1,671,928.65 |
| Sep 02, 2010 | Principal Payment | $14,632.31 | $14,632.31 | | $1,657,296.34 |
| Sep 02, 2010 | Interest Payment | $11,842.83 | | $11,842.83 | $1,657,296.34 |
| Oct 01, 2010 | Principal Payment | $16,462.31 | $16,462.31 | | $1,640,834.03 |
| Oct 01, 2010 | Interest Payment | $10,012.83 | | $10,012.83 | $1,640,834.03 |
| Nov 03, 2010 | Principal Payment | $15,194.41 | $15,194.41 | | $1,625,639.62 |
| Nov 03, 2010 | Interest Payment | $11,280.73 | | $11,280.73 | $1,625,639.62 |
| Dec 02, 2010 | Principal Payment | $16,653.57 | $16,653.57 | | $1,608,986.05 |
| Dec 02, 2010 | Interest Payment | $9,821.57 | | $9,821.57 | $1,608,986.05 |
| Dec 09, 2010 | Principal Payment | $40,200.00 | $40,200.00 | | $1,568,786.05 |
| Jan 03, 2011 | Principal Payment | $15,957.94 | $15,957.94 | | $1,552,828.11 |
| Jan 03, 2011 | Interest Payment | $10,517.20 | | $10,517.20 | $1,552,828.11 |
| Jan 14, 2011 | Principal Payment | $33,256.25 | $33,256.25 | | $1,519,571.86 |
| Jan 18, 2011 | SALE OF '82 MONAN TRAILER | $1,500.00 | $1,500.00 | | $1,518,071.86 |
| Feb 07, 2011 | Principal Payment | $15,324.97 | $15,324.97 | | $1,502,746.89 |
| Feb 07, 2011 | Interest Payment | $11,150.17 | | $11,150.17 | $1,502,746.89 |
| Feb 17, 2011 | SYMBION PAYMENT | $37,028.12 | $37,028.12 | | $1,465,718.77 |
| Mar 04, 2011 | Principal Payment | $18,764.05 | $18,764.05 | | $1,446,954.72 |
| Mar 04, 2011 | Interest Payment | $7,711.09 | | $7,711.09 | $1,446,954.72 |
| Apr 05, 2011 | Principal Payment | $16,828.78 | $16,828.78 | | $1,430,125.94 |
| Apr 05, 2011 | SYMBION PAYMENT | $37,028.12 | $37,028.12 | | $1,393,097.82 |
| Apr 05, 2011 | Interest Payment | $9,646.36 | | $9,646.36 | $1,393,097.82 |
| May 10, 2011 | Principal Payment | $16,317.14 | $16,317.14 | | $1,376,780.68 |
| May 10, 2011 | Interest Payment | $10,158.00 | | $10,158.00 | $1,376,780.68 |
| Jun 06, 2011 | Principal Payment | $18,730.75 | $18,730.75 | | $1,358,049.93 |
| Jun 06, 2011 | Interest Payment | $7,744.39 | | $7,744.39 | $1,358,049.93 |
| Jun 14, 2011 | Rate Change | Interest Rate: | 9.0000% | | |
| Jun 14, 2011 | Note Renewal | $0.00 | | | $1,358,049.93 |
| Jul 12, 2011 | Principal Payment | $16,289.77 | $16,289.77 | | $1,341,760.16 |
| Jul 12, 2011 | Interest Payment | $10,185.37 | | $10,185.37 | $1,341,760.16 |
| Jul 13, 2011 | Automatic Late Charge | $1,300.91 | | | $1,341,760.16 |
| Jul 19, 2011 | Late Charge Waive (Manual) | $1,300.91 | | | $1,341,760.16 |
| Jul 20, 2011 | FEES COLLECTED | $5,920.00 | | | $1,341,760.16 |
| Aug 02, 2011 | OVERPAYMENT OF RECORDING FEES | $10.80 | $10.80 | | $1,341,749.36 |
| Aug 05, 2011 | Principal Payment | $19,309.49 | $19,309.49 | | $1,322,439.87 |
| Aug 05, 2011 | Interest Payment | $6,708.79 | | $6,708.79 | $1,322,439.87 |
| Aug 11, 2011 | Interest Charge (Manual) | $5,920.00 | | $5,920.00 | $1,322,439.87 |
| Aug 15, 2011 | SYMBION PAYMENT | $32,604.23 | $32,604.23 | | $1,289,835.64 |
| Aug 26, 2011 | SYMBION PAYMENT | $96,007.22 | $96,007.22 | | $1,193,828.42 |
| Sep 13, 2011 | Principal Payment | $15,554.94 | $15,554.94 | | $1,178,273.48 |
| Sep 13, 2011 | Interest Payment | $10,463.34 | | $10,463.34 | $1,178,273.48 |
| Oct 04, 2011 | Principal Payment | $20,863.33 | $20,863.33 | | $1,157,410.15 |
| Oct 04, 2011 | Interest Payment | $5,154.95 | | $5,154.95 | $1,157,410.15 |

Print                                                                                                                 Page 4 of 5

(91) RMG SHADOW NOTES                     ANB BANK                              3/20/2014 9:08:06 AM
███ 701
Printed by: LISA MILLS 01                                                       Reporting Institution: 1

| Date | Description | Transaction Amount | Principal | Interest | Principal Balance |
|---|---|---|---|---|---|
| Nov 04, 2011 | Principal Payment | $18,543.34 | $18,543.34 | | $1,138,866.81 |
| Nov 04, 2011 | Interest Payment | $7,474.94 | | $7,474.94 | $1,138,866.81 |
| Dec 08, 2011 | Principal Payment | $17,951.31 | $17,951.31 | | $1,120,915.50 |
| Dec 08, 2011 | Interest Payment | $8,066.97 | | $8,066.97 | $1,120,915.50 |
| Jan 10, 2012 | Principal Payment | $18,311.98 | $18,311.98 | | $1,102,603.52 |
| Jan 10, 2012 | Interest Payment | $7,706.30 | | $7,706.30 | $1,102,603.52 |
| Feb 02, 2012 | Principal Payment | $20,734.97 | $20,734.97 | | $1,081,868.55 |
| Feb 02, 2012 | Interest Payment | $5,283.31 | | $5,283.31 | $1,081,868.55 |
| Mar 02, 2012 | Principal Payment | $19,481.99 | $19,481.99 | | $1,062,386.56 |
| Mar 02, 2012 | Interest Payment | $6,536.29 | | $6,536.29 | $1,062,386.56 |
| Apr 04, 2012 | Principal Payment | $18,714.37 | $18,714.37 | | $1,043,672.19 |
| Apr 04, 2012 | Interest Payment | $7,303.91 | | $7,303.91 | $1,043,672.19 |
| May 07, 2012 | Principal Payment | $18,843.03 | $18,843.03 | | $1,024,829.16 |
| May 07, 2012 | Interest Payment | $7,175.25 | | $7,175.25 | $1,024,829.16 |
| Jun 04, 2012 | Principal Payment | $20,040.11 | $20,040.11 | | $1,004,789.05 |
| Jun 04, 2012 | Interest Payment | $5,978.17 | | $5,978.17 | $1,004,789.05 |
| Jun 06, 2012 | Rate Change | Interest Rate: | 9.0000% | | |
| Jun 06, 2012 | Note Renewal | $0.00 | | | $1,004,789.05 |
| Jul 09, 2012 | Principal Payment | $18,691.69 | $18,691.69 | | $986,097.36 |
| Jul 09, 2012 | Interest Payment | $7,326.59 | | $7,326.59 | $986,097.36 |
| Aug 13, 2012 | Automatic Late Charge | $1,300.91 | | | $986,097.36 |
| Aug 14, 2012 | ADJ AMT FOR 6/10 AND 9/11 PYMTS | $20,459.30 | $20,459.30 | | $965,638.06 |
| Aug 14, 2012 | ADJ AMT FOR 6/10 AND 9/11 PYMTS | $5,558.98 | | $5,558.98 | $965,638.06 |
| Sep 06, 2012 | Principal Payment | $20,586.57 | $20,586.57 | | $945,051.49 |
| Sep 06, 2012 | Interest Payment | $5,431.71 | | $5,431.71 | $945,051.49 |
| Oct 02, 2012 | Principal Payment | $20,702.37 | $20,702.37 | | $924,349.12 |
| Oct 02, 2012 | Interest Payment | $5,315.91 | | $5,315.91 | $924,349.12 |
| Nov 05, 2012 | Principal Payment | $19,470.81 | $19,470.81 | | $904,878.31 |
| Nov 05, 2012 | Interest Payment | $6,547.47 | | $6,547.47 | $904,878.31 |
| Nov 20, 2012 | Late Charge Waive (Manual) | $1,300.91 | | | $904,878.31 |
| Dec 03, 2012 | Principal Payment | $20,739.82 | $20,739.82 | | $884,138.49 |
| Dec 03, 2012 | Interest Payment | $5,278.46 | | $5,278.46 | $884,138.49 |
| Jan 07, 2013 | Principal Payment | $19,571.44 | $19,571.44 | | $864,567.05 |
| Jan 07, 2013 | Interest Payment | $6,446.84 | | $6,446.84 | $864,567.05 |
| Jan 16, 2013 | Principal Payment | $1,400.00 | $1,400.00 | | $863,167.05 |
| Feb 04, 2013 | Principal Payment | $20,983.14 | $20,983.14 | | $842,183.91 |
| Feb 04, 2013 | Interest Payment | $5,035.14 | | $5,035.14 | $842,183.91 |
| Mar 07, 2013 | Principal Payment | $20,579.17 | $20,579.17 | | $821,604.74 |
| Mar 07, 2013 | Interest Payment | $5,439.11 | | $5,439.11 | $821,604.74 |
| Apr 08, 2013 | Principal Payment | $20,540.91 | $20,540.91 | | $801,063.83 |
| Apr 08, 2013 | Interest Payment | $5,477.37 | | $5,477.37 | $801,063.83 |
| May 07, 2013 | Principal Payment | $21,178.50 | $21,178.50 | | $779,885.33 |
| May 07, 2013 | Interest Payment | $4,839.78 | | $4,839.78 | $779,885.33 |
| May 10, 2013 | Rate Change | Interest Rate: | 9.0000% | | |
| May 10, 2013 | Note Renewal | $0.00 | | | $779,885.33 |
| Jun 03, 2013 | Principal Payment | $21,631.43 | $21,631.43 | | $758,253.90 |

BNKS00000020
BNKS00000020

| (91) RMG SHADOW NOTES ▇5701 | | ANB BANK | | | 3/20/2014 9:08:06 AM | |
| --- | --- | --- | --- | --- | --- | --- |
| Printed by: LISA MILLS 01 | | | | | Reporting Institution: 1 | |
| Date | Description | | Transaction Amount | Principal | Interest | Principal Balance |
| Jun 03, 2013 | Interest Payment | | $4,386.85 | | $4,386.85 | $758,253.90 |
| Jul 01, 2013 | PAYOFF | | $821,027.61 | $758,253.90 | $62,773.71 | $0.00 |

BNKS00000021
BNKS00000021