**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 00-cr-0504-CMA-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL D. WILHITE,

    Defendant.

---

**UNITED STATES' MOTION FOR ENTRY OF DECREE OF SALE AND TO APPOINT A RECEIVER TO ENFORCE LIEN**

---

The United States moves for an entry of decree of sale of Advanced Floor Concepts, LLC ("AFC"), to satisfy the lien attached to that property resulting from Defendant Michael D. Wilhite's restitution order, and to distribute the proceeds of such sale according to respective interests of the parties and of the United States. 26 U.S.C. § 7403(c); 18 U.S.C. §§ 3613(c) and (f). In addition, the United States moves to appoint Edward Cordes, CPA, as a receiver to enforce the lien attached to Mr. Wilhite's interest in AFC, to manage AFC pending a sale, and to sell the company. 26 U.S.C. §§ 7402(a) and 7403(d).

Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned certifies that he conferred with counsel for the Wilhites via telephone and email on October 19 and 24, 2017, regarding this motion. The Wilhites oppose this motion.

The United States respectfully requests that the Court expedite the briefing schedule and rule on this motion promptly. Given the Wilhites' continued attempts to delay

enforcement of Mr. Wilhite's large criminal restitution debt by the flurry of recent motions, their continued failure to abide by the Court's Injunction (Doc. 165 at 5-6), and their overall lack of candor and honesty in dealing with the government and the Court (Doc. 159 at 11), it is imperative that a receiver be appointed as expeditiously as possible.

**I.    RELEVANT PROCEDURAL HISTORY AND LEGAL STANDARDS.**

In 2001, Mr. Wilhite pled guilty to wire fraud, an offense that involved "fraud or deceit." Docs. 11 and 13. Thus, under the Mandatory Victims' Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A(a) and A(c)(1)(A)(ii), this Court ordered Mr. Wilhite to pay over $1.7 million in restitution to the victim of his crime. Doc. 23.

The restitution order created a lien in favor of the United States "on all property or rights to property" belonging to Mr. Wilhite, which lien the government may enforce "as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986."[1] 18 U.S.C. § 3613(c); *see also id.* § 3613(f); *United States v. Loftis*, 607 F.3d 173, 178, n.7 (5th Cir. 2010) (once restitution is ordered, all of the defendant's property becomes subject to a lien in favor of the United States in the same manner as tax liens). The tax-lien statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Bess*, 357 U.S. 51, 55 (1958). A restitution order also may be "enforceable in accordance with the practices and procedures for the enforcement of a civil judgment imposing under Federal law …." 18 U.S.C. § 3613(a).

---

[1] The tax lien statute, 26 U.S.C. § 6321, provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

As the Court has noted, the United States is enforcing Mr. Wilhite's order of restitution under 26 U.S.C. § 6321[2] and under the Federal Debt Collection Procedures Act ("FDCPA"). Doc. 159 at 15 n.10. The government thus obtained a writ of execution to sell Mr. Wilhite's non-exempt property interest in AFC. Doc. 31 (citing 28 U.S.C. § 3203).

The government pursued a nominee theory to establish Mr. Wilhite's ownership interest in AFC. Under the nominee theory of tax-lien enforcement, the government must meet two requirements. First, the debtor must have a property right under state law in the asset that the United States seeks to execute on. As the Supreme Court has explained, state law determines a person's "bundle of sticks" (or property). *United States v. Craft*, 535 U.S. 274, 278 (2002). Second, the debtor's "state-delineated rights [must] qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Craft*, 535 U.S. at 279.

The Court has made the required findings under Supreme Court and Tenth Circuit precedent. First, it concluded that Mr. Wilhite has an equitable interest in AFC because he acted with an actual intent to defraud his creditors, in violation of the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. § 38-8-105(2). Doc. 121 at 28. The Court also held, after an evidentiary hearing, that Mr. Wilhite's ownership interest in AFC was 73.9%. Doc. 159 at 13. Second, the Court had "no trouble concluding that Mr. Wilhite's 73.9% membership interest in AFC … constitute[s] property under the federal tax lien statute and the FDCPA such that it is subject to levy by writ of execution." *Id.* at 16.

---

[2] Any state law or FDCPA exemptions to collection are inapplicable here, "when the United States is enforcing a federal criminal debt." *United States v. Elashi*, 789 F.3d 547, 552 (5th Cir. 2015).

## II.  THE COURT SHOULD ENTER A DECREE OF SALE TO SELL AFC.

That brings us to the appropriate remedy. The United States seeks that the Court enter an order or decree of sale of AFC under the federal tax lien statute, 26 U.S.C. § 7403(c), which provides as follows:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

As an initial matter, the Court should adjudicate the priority of outstanding liens on AFC. There are two such liens: the criminal restitution lien (Ex. 1) and an equipment lien filed by Kubota Credit Corporation ("Kubota").[3] Ex. 2. The Court should find that the United States' lien is superior to Kubota's. The government perfected its lien on AFC by filing a notice of lien for restitution in Douglas County, Colorado, in August 2001 (Ex. 1), where AFC is located. 26 U.S.C. § 6323(f)(1)(A)(ii) (lien as to personal property must be filed where the property is situated); *United States v. Del Ray Sportswear, Inc.*, 247 F. Supp. 448, 450 (D. Mass. 1965). Kubota's lien was filed later, in June 2014. Ex. 2. The government's lien, having been perfected before Kubota's, is superior. Accordingly, the government asks that upon a sale of AFC, the liens be satisfied in this order: (1) United States and (2) Kubota.

The Court may then proceed to order the sale of AFC. The Supreme Court has noted that 26 U.S.C. § 7403(c) "contemplate[s], not merely the sale of the delinquent

---

[3] The government served Kubota with the writ of execution and will serve it this motion, too.

4

taxpayer's own interest, but the sale of the entire property (as long as the United States has any "claim or interest" in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution." *United States v. Rodgers*, 461 U.S. 677, 693-94 (1983). The Court observed that "interests in property, when sold separately, may be worth either significantly more or significantly less than the sum of their parts. When the latter is the case, it makes considerable sense to allow the Government to seek the sale of the whole, and obtain its fair share of the proceeds, rather than satisfy itself with a mere sale of the part." *Id.* at 694.

The Court may order the sale of AFC as a whole and, pending the sale, it may allow the government to receive distributions from Mr. Wilhite's share of the profits or AFC's assets. As the Supreme Court noted in the related context of partnerships, a "federal tax lien does attach to an individual partner's interest in the partnership, that is, to the fair market value of his or her share in the partnership assets. As a holder of this lien, the Federal Government is entitled to receive ... the profits to which the assigning partner would otherwise be entitled, including predissolution distributions and the proceeds from dissolution." *Craft*, 535 U.S. at 286 (citations and internal quotation marks omitted).

Still, because Mrs. Wilhite has a minority interest in AFC, the Court must consider the following factors to authorize the sale of the entire property: (1) "the extent to which the Government's financial interests would be prejudiced if it were limited to a forced sale of the partial interest of the party actually liable for the delinquent taxes"; (2) "the third party with the nonliable separate interest would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized

5

expectation that the separate property would not be subject to a forced sale by the delinquent taxpayer or his creditors"; (3) "the likely prejudice to the third party"; and (4) "the relative character and value of the liable and nonliable interest in the property." *Rodgers*, 461 U.S. at 710-11.

Here, the above factors strongly favor selling all of AFC. First, a sale solely of Mr. Wilhite's majority interest will prejudice the government because a potential purchaser will be less likely to pay fair market value for AFC, knowing that a minority member will continue to own the company. *Cf. United States v. Kimmell*, No. 08-cv-0253-WYD-KLM, 2010 WL 1240579, at *2 (D. Colo. 2010).

Second, Mrs. Wilhite cannot show a reasonable expectation that AFC would be protected from a forced sale. The MVRA provides that a restitution order is enforced as a federal tax lien, and Mrs. Wilhite should have known that the lien attached to all property or rights to property belonging to Mr. Wilhite. 18 U.S.C. § 3613(c). Further, in August 2001, the government recorded the lien as permitted under 18 U.S.C. § 3613(d), Ex. 1, "and a reasonable inspection would have uncovered its existence." *TPF Deeds, LLC v. United States*, 138 F. Supp. 3d 1268, 1285 (D. Utah 2015) (finding that forced sale of property was appropriate); *United States v. D'Andrea*, No. 09-cv-01940-PAB-MJW, 2010 WL 3842807, at *12 (D. Colo. Aug. 31, 2010), *rep. and rec. adopted*, 2010 WL 3842695 (D. Colo. Sept. 27, 2010) (same).

Third, little prejudice will inure to Mrs. Wilhite from the sale. She will be compensated in proportion to her interest in AFC after application of the sales proceeds to the costs of sale and any other outstanding liens. *Kimmell*, 2010 WL 1240579, at *3. In

6

the alternative, Mrs. Wilhite may bid at a foreclosure sale to protect her interest or avoid foreclosure. *TPF Deeds*, 138 F. Supp. 3d at 1285.

Fourth, Mrs. Wilhite's minority interest in AFC favors the forced sale of the entire company. As the Supreme Court noted, a non-liable party with a small interest in the property presents "little reason not to allow the sale." *Rodgers*, 461 U.S. at 711. In sum, all of the factors favor a forced sale of the entire property. Therefore, the Court should foreclose on the government's lien and approve AFC's sale.

### III. THE COURT SHOULD APPOINT A RECEIVER TO ENFORCE THE RESTITUTION LIEN AND SELL AFC.

As shown above, the United States has a valid and subsisting federal tax lien on all of Mr. Wilhite's property and rights to property. The lien has attached to all of AFC, a company held by his nominee, Mrs. Wilhite. Federal law provides that in any proceeding to enforce a federal tax lien, "at the instance of the United States, the court may appoint a receiver to enforce the lien." 26 U.S.C. § 7403(d); *see also id.* § 7402(a) (court has jurisdiction to appoint a receiver). Generally, the only showing the government need make is that appointment of a receiver is preferable to a judicial sale. *See, e.g.*, *United States v. Peelle Co.*, 224 F.2d 667, 669 (2d Cir. 1955); *see also United States v. Estate Preserv. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000).

Here, given that the sale of an entire company is contemplated, appointment of a receiver is preferable to a judicial sale. The receiver will have to value AFC, find prospective buyers, manage the business in the interim, and "protect the stream of income that may be being generated from [AFC]." *United States v. Stanton*, No. SA-06-CA-0234-XR, 2008 WL 2120066, at *7 (W.D. Tex. May 20, 2008).

7

Some judicial decisions, however, require the government "to make a *prima facie* showing that a substantial tax liability probably exists and that the Government's collection efforts may be jeopardized if a receiver is not appointed." *In re McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994) (citations omitted). "The appointment of a receiver is an especially appropriate remedy in cases involving fraud and the possible dissipation of assets since the primary consideration in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit." *Id.*

While not required, the government can establish the alternative showing of jeopardy. First, in September 2015, at the time of the first evidentiary hearing in this proceeding, Mr. Wilhite and the government stipulated that $1,718,129.70 was the amount of Mr. Wilhite's restitution debt.[4] Doc. 99 at 7:17 – 8:18. Needless to say, that is a "substantial" amount. *Cf. McGaughey*, 24 F.3d at 906 ($3.4 million tax debt was substantial, warranting appointment of a receiver).

Second, recovery of the restitution debt will be jeopardized without a receiver because this case involves fraud, in the underlying criminal offense, in the Wilhites' fraudulent conduct to conceal Mr. Wilhite's ownership of AFC, and in their false testimony to this Court. Doc. 159 at 7, 9, 11 (finding the Wilhites' testimony not credible and noting their "chronic attempt to conceal information from the Government and this Court"); Doc. 121 at 27 (finding that the circumstances surrounding Mrs. Wilhite's creation of AFC, solely in her name, were sufficiently indicative of Mr. Wilhite's intent to defraud his past and future creditors").

---

[4] As of September 14, 2017, Mr. Wilhite owes $1,715,079.30.

Third, jeopardy is also shown by the Wilhites' conduct in violating the Court's injunction against them and AFC. In December 2016, the Court found that the Wilhites, employing AFC, violated the injunction by transferring $10,220 from AFC to Colorado Precious Metals. Doc. 135 at 2. Mrs. Wilhite's attempted explanation of the transaction was, in the Court's words, "unconvincing," observing that "AFC may not aid in DW Support's investment endeavors until the remaining issues before this Court are resolved." *Id.* The Wilhites flouted the Court's injunction and have demonstrated that they will circumvent any court-ordered restrictions placed on their property. Doc. 165 at 5-6 (explaining how the Wilhites have violated the injunction by encumbering AFC with a personal loan). Given all these considerations, appointment of a receiver is necessary.

## IV.  THE COURT SHOULD APPOINT MR. EDWARD B. CORDES AS RECEIVER.

The undersigned has discussed with Edward B. Cordes, CPA, the possibility of an appointment as a Receiver, with powers of a receiver in equity, to enforce the United States' federal tax lien as it relates to the operation and sale of AFC. Mr. Cordes' qualifications are set forth in the accompanying résumé/biography attached hereto as Exhibit 3. That exhibit also details Mr. Cordes' experience, including experience specifically pertaining to the operation, management, and receivership of construction companies. He also identifies key employees of the company, and discloses their hourly fees. Mr. Cordes may begin work immediately, should the Court approve the appointment. Given Mr. Cordes' substantial experience in receiverships, the United States believes that his fee structure and suggested approach, are reasonable and should be approved by the Court.

Mr. Cordes indicated that he would accept the appointment on the terms set forth in the proposed order and that he is available to attend (by telephone or in person) any hearing on this motion if the Court so desires. The United States, therefore, recommends the appointment of Mr. Cordes as Receiver, with powers of a receiver in equity, on the terms set forth in that proposed order. Ex. 4.

The proposed order will allow Mr. Cordes to perform all required functions to operate, manage, and sell AFC. If the Court enters the proposed order, it should, in tandem, dissolve the existing injunction (Doc. 135) because it likely may conflict with the Receiver's potential duties and actions. The proposed order dissolves the injunction (Ex. 4 ¶ 23), but it also enjoins the Wilhites from taking any actions to harm AFC and from directly or indirectly transferring, encumbering, concealing, or in any other way disposing of AFC's assets or property in any form. *Id.* ¶¶ 14-17. The government believes that those prohibitions and the remaining provisions of the proposed order will protect AFC and permit the receiver to accomplish what the Wilhites have intentionally delayed for nearly 17 years: full payment of Mr. Wilhite's restitution debt.

## V.   CONCLUSION.

In sum, the motion for a decree of sale and for appointment of a receiver should be granted.

        Respectfully submitted,

        ROBERT C. TROYER
        Acting United States Attorney


        s/Juan G. Villaseñor
        JUAN G. VILLASEÑOR
        Assistant United States Attorney
        United States Attorney's Office
        1801 California Street, Suite 1600
        Denver, Colorado 80202
        Telephone: (303) 454-0185
        E-mail: juan.villasenor@usdoj.gov

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on November 3, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

rbednarski@shermanhoward.com
Smikulec@sah.com

and I hereby certify that on the same date as above, I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated above the nonparticipant's name:

**First-class mail**
Kubota Credit Corporation
c/o CT Corporation System
1201 Peachstreet, N.E. Fulton
Atlanta, GA  30361


        s/Juan G. Villaseñor
        United States Attorney's Office