IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Case No. 00-cr-00504-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL DAVID WILHITE,

    Defendant.

---

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR ENTRY OF DECREE OF SALE AND TO APPOINT A RECEIVER TO ENFORCE LIEN**

---

This matter is before the Court on the Government's Motion for Entry of Decree of Sale and to Appoint a Receiver to Enforce Lien, wherein the Government argues that Advanced Floor Concepts (AFC) should be sold pursuant to 28 U.S.C. § 7403(c) to satisfy Defendant Michael Wilhite's long-outstanding restitution obligations. (Doc. # 168.) Mr. Wilhite and his wife Darla Wilhite (the Wilhites, collectively) challenge the motion (Doc. # 177), and for the following reasons, the Court grants it.

## I.    BACKGROUND

Mr. Wilhite owes the Government at least $1,714,708.79 in restitution. In 2015, the Government filed an Application for Writ of Execution upon "the personal property of [Mr. Wilhite], which his wife, Darla Wilhite . . . , holds as a nominee." (Doc. # 30.) The Clerk issued the Writ of Execution to the United States Marshal, commanding, as pertinent here, the sale of Mr. Wilhite's interest in AFC. (Doc. # 31.) Mrs. Wilhite filed a motion to quash the Writ, reasoning that Mr. Wilhite has no ownership interest in AFC because it is

1

solely owned and operated by Mrs. Wilhite.  (Doc. # 36 at ¶ 5.)  In 2016, the Court denied the motion to quash and determined that Mr. Wilhite does, indeed, have an equitable interest in AFC.  (Doc. ## 121, 159.)  On October 13, 2017, this Court specifically concluded that Mr. Wilhite has a 73.9% interest in AFC and Mrs. Wilhite has a 26.1% interest.  (Ownership Order) (Doc. # 159.)  The Court also concluded that Mr. Wilhite's 73.9% interest constitutes property under the federal tax lien statute and the Federal Debt Collection Procedures Act (FDCPA) and that such 73.9% interest may be subject to levy or collection by the Government to satisfy Mr. Wilhite's substantial and long-outstanding restitution obligations.  (*Id.*)

In the instant motion, the Government, seeking to levy on that 73.9% interest, argues that a forced sale of AFC is the most appropriate mechanism for doing so.  (Doc. # 168 at 1.)  The Government also requests that a receiver be appointed to manage the sale.  (Doc. # 168 at 1.)

The Wilhites object to the sale of AFC, arguing primarily that the Government only has the right to seize Mr. Wilhite's individual interest in AFC, not to sell the entire company.  For the same reasons, the Wilhites also contend that there is no justification or authority for appointing a receiver in this case.  (*Id.* at 11–15.)

## II.     SALE OF AFC

Mr. Wilhite's restitution obligation was imposed under the Mandatory Victim's Restitution Act (MVRA) and created a lien in favor of the Government.  18 U.S.C. 3613(a).  The Government's action to enforce its lien in this case is therefore "in every real sense a proceeding in court to collect a tax."  *United States v. Holmes*, 727 F.3d 1230, 1235 (10th Cir. 2013).

The reach of a federal tax lien is broad. It provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal[1], belonging to such person.

26 U.S.C. § 6321 (emphasis added.) Congress intended the lien "to reach every interest in property that a taxpayer may have." *United States v. National Bank of Commerce*, 472 U.S. 713, 719–20 (1985). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *U.S. v. Craft*, 535 U.S. 274 (2002).

Although broad, a federal tax lien may only reach a debtor's "property or rights to property" to the extent that state law recognizes the subject interest as property. *Id.* at 722. In other words, the government "steps into the shoes of the [debtor] and acquires whatever rights to the property the [debtor] possessed" under state law. *Kane v. Captical Guardian Trust Co*, 145 F.3d 1218, 1221 (10th Cir. 1998.) In looking to state law, courts consider "the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them." *Craft*, 535 U.S. at 279.

This Court has already concluded that Mr. Wilhite has a 73.9% ownership[2] interest in AFC under Colorado state law, and that this 73.9% interest constitutes property or

---

[1] The Wilhites make much of the fact that the property at issue in this case is not real property. That argument lacks merit in light of this plain language permitting broad lien attachment.

[2] The Wilhites argue that Mr. WIlhite merely has a membership interest, not an ownership interest in AFC. The Court finds this to be a distinction without a difference. Indeed, a "member" of an LLC is statutorily defined as a person "with an ownership interest" in the LLC. Colo. Rev. Stat. § 7-80-102(9); *see also Condo v. Conners*, 271 P.3d 524, 526 (Colo. App. 2010), as modified on denial of reh'g (Sept. 16, 2010), aff'd, 266 P.3d 1110 (Colo. 2011) ("A member of a limited liability company is a person who has an ownership interest in it."). Moreover, as the majority interest holder, Mr. Wilhite's interest entitled him to "manage the Company's business," including a right to dissolve the company. And, as this Court has set forth in numerous prior orders, Mr. Wilhite played a clear managerial and ownership role in AFC, operating as CEO of the company since its inception, among other things.

rights to property under the federal tax lien statute. (Doc. # 159 at 16.) *See Craft*, 535 U.S. at 286 (The federal tax lien attaches to "an individual partner's interest in the partnership, that is, to the fair market value of his or her share in the partnership assets."); *LaFond v. Sweeney*, 345 P.3d 932, 939 (Colo. App. 2012); aff'd, 343 P.3d 939 (Colo. 2015) (partnership law principles provide guidance when examining LLCs because they share many important characteristics and the language of the acts are similar).

As a holder of this lien, the Government, stepping into Mr. Wilhite's shoes, is entitled to, at a minimum, a "share of the profits and losses," the "right to receive distributions" of AFC's assets, including any proceeds from dissolution, and many other rights set forth in AFC's Operating Agreement. Colo. Rev. Stat. §§ 7-80-102 (9–10); 7-80-108(1)(a); *see United States v. Triangle Oil*, 277 F.3d 1251, 1255 (10th Cir. 2002) (a partner's interest generally consists of the "right to a proportionate share of the distribution of partnership profits or surplus after the payment of partnership debts").

Having determined state-created property interests to which the Government's tax lien attaches, the Court looks to federal law to determine what consequences attach to those interests.[3] Here, the Government is seeking to use its foreclosure power to enforce

---

[3] The Wilhites highlight various Colorado cases and statutes addressing the power of creditors under state law. Those cases and statutes are inapplicable here because it is well-settled that enforcement of a federal tax lien is not subject to state law enforcement requirements. *See United States v. Rodgers*, 461 U.S. 677, 684 (1983) ("[T]he consequences that attach to [state] interests is a matter left to federal law."); *United States v. Mitchell,* 403 U.S. 190, 205 (1971) (state law determines income attributable to wife as community property, but state law allowing wife to renounce community rights and obligations not effective as to liability for federal tax); *United States v. Union Central Life Insurance Co.,* 368 U.S. 291, 293–295 (1961) (federal tax lien not subject, even as against good faith purchaser, to state filing requirements); *Aquilino v. United States,* 363 U.S. 509, 513–515 (1960), and cases cited (attachment of federal lien depends on whether "property" or "rights to property" exist under state law; priority of federal lien depends on federal law); *United States v. Bess,* 357 U.S. 51, 56–57 (1958) (once it has been determined that state law has created property interests sufficient for federal tax lien to attach, state law "is inoperative to prevent the attachment" of such liens); *Springer v. United States,* 102 U.S. 586 (1881) (federal tax sale not subject to state requirement that independent lots be sold separately).

collection of its lien.[4] Specifically, the Government seeks to foreclose on Mr. Wilhite's 73.9% ownership interest in AFC and force a sale of AFC pursuant to 26 U.S.C. § 7403, which provides:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

Having thoroughly reviewed the law applicable to foreclosure suits, the Court finds that the Government is entitled to foreclose on Mr. Wilhite's 73.9% ownership interest in AFC under § 7403. *Craft*, 535 U.S. at 286 ("The Federal Government may not compel the sale of partnership assets (although it may foreclose on the partner's interest, 1 Bromberg & Ribstein § 3.05(d)(3)(iv))."). Unlike administrative levy actions, a judicial foreclosure suit under § 7403 is a plenary action in which the court "adjudicate[s] all matters involved" and "finally determine[s] the merits of all claims to and liens upon the property." *See Triangle Oil*, 277 F.3d at 1255 (the government's administrative "levy power" does not "transfer ownership of the property" to the government, unless the government institutes "a foreclosure or similar action.") In adjudicating a foreclosure suit, the Court, sitting in equity, may broadly decree the sale of property and order the

---

[4] The Wilhites cite numerous cases discussing the administrative levy power of the IRS and concluding that the IRS's power is limited, i.e. the IRS may only compel the sale of the partnership's interest but may not touch the assets of other partners or of the partnership generally. Although this may be true for administrative levy actions, the Wilhites have not presented this Court with any cases, and the Court has found none, stating that the IRS may not *foreclose* on those assets under § 7403. Indeed, the government's foreclosure power is significantly broader than its administrative levy power. In any event, the Court need not resolve this issue now because the Government concedes that it is not attempting to compel the sale of AFC's assets, but merely the sale of the Wilhites' membership interests in AFC.

5

distribution of proceeds—just as the Government requests that the Court do in this case. *See United States v. Schmidt*, 206 F. Supp. 806, 810 (E.D. Mo. 1962) (concluding that the government had a valid lien on a debtor's 258 shares of stock in a company that could be foreclosed and sold under § 7403); *United States v. Rodgers*, 461 U.S. 677, 696 (1983) (comparing the government's limited administrative levy power under § 6321 to its broad foreclosure power under § 7403).

The issue then becomes whether the Government, foreclosing on Mr. Wilhite's 73.9 % interest in AFC, may force a sale of the entire company. In *Rodgers*, the Supreme Court made clear that § 7403(c), "contemplate[s], not merely the sale of the [debtor's] own interest, but the sale of the entire property (as long as the United States has any "claim or interest" in it)." 461 U.S. at 693–94. The *Rodgers* Court distinguished between government actions to collect taxes under § 6321, which cannot extend beyond the debtor's property interests and government foreclosure actions under § 7403, which can. *Id.* at 690–91 (approving of *Mansfield v. Excelsior Refining Co.*, 135 U.S. 326, 339–341 (1890), where the Court upheld the foreclosure of an easement held by a delinquent taxpayer against the underlying landholder's interest, but allowing only the sale of the debtor's leasehold interest rather than the entire fee because (1) it was owned by the landholder and (2) the sale was by administrative levy; the Court also concluded, however, that the government could seek a judicial sale of the entire property under the predecessor of § 7403.)). The *Rodgers* Court also highlighted the expansive language of § 7403, particularly the section allowing the government to "enforce [its] lien" and seek to "subject *any property*; [of] *whatever nature*, of the delinquent, or *in which he has any right, title, or interest,* to the payment of such tax or liability." *Id.* at 692. The Court added, "We

6

can think of virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale simply to protect the interests of the [debtor]. . . . And even when the interests of third parties are involved, we think that a certain fairly limited set of considerations will almost always be paramount." *Id*. at 709–10. Those considerations are:

> (1) the extent to which the government's financial interest would be prejudiced if it was limited to the sale of only the partial interest actually subject to the delinquent taxes; (2) whether the third party has a "legally recognized expectation" that his interest would not be subject to a forced sale by the delinquent taxpayer or his creditors; (3) the possibility that the third party will be prejudiced by undercompensation for his interest or by personal dislocation costs; and (4) the relative character and value of the respective possessory and fee interests in the property.

*Hopkins*, 859 F.Supp. at 212 (citing *Rodgers*, 461 U.S. at 710–11). The *Rodgers* Court further emphasized that "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the [g]overnment's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 at 711; *See United States v. Winsper*, 680 F.3d 482, 489 (6th Cir. 2012) ("[T]he *Rodgers* factors . . . address the scope of . . . the district court's discretion not to foreclose" and are only required if the sale would cause undue hardship to an innocent third-party).

Pursuant to the reasoning in *Rodgers* and its progeny, the Court concludes that the Government may indeed seek a decree of sale for AFC in its entirety, rather than only Mr. Wilhite's ownership interest. Because Mrs. Wilhite also has an interest in the company, the Court turns to the *Rodgers* balancing test ensure that a sale is appropriate in these circumstances.

7

First, the Court finds that the Government's financial interest would be prejudiced if sale of the entire company was denied and the Government was limited to selling only Mr. Wilhite's interest. Potential purchasers of the company would not be likely to buy, or at least to pay fair market value for, the majority interest in a company where a minority interest member—who is the wife of the majority interest owner and who, on paper, appears very involved in the company—would continue to participate. Having to sell Mr. Wilhite's individual interest at a discounted price, or not being able to sell it at all, would mitigate the Government's recovery of Mr. Wilhite's significant unpaid restitution. This factor therefore weighs in favor of a forced sale.

Second, the Court finds that the Government has shown that Mrs. Wilhite has not and cannot show any legal expectation that the subject property would be protected from a forced sale. The restitution order creating a lien on all property Mr. Wilhite owns or in which he has an interest was entered in 2001, and the Government publicly recorded its lien that same year. Mrs. Wilhite has therefore been aware of her husband's lien since at least that date. She has also been substantially involved in the present litigation, where, as mentioned, the Government has openly pursued enforcement of its lien on Mr. Wilhite's interest in AFC since at least 2015. Indeed, as this Court set forth in its order denying Mrs. Wilhite's Motion to Quash, she and Mr. Wilhite were well-aware of Mr. Wilhite's prior significant tax debt to the IRS when they started AFC and their conduct related to AFC was done with the intent to hide Mr. Wilhite's assets and defraud the Government. Considering Mr. Wilhite's active involvement in AFC, the Wilhites' joint efforts to hide his involvement, and the established law in Colorado that "the district court generally has the discretion to foreclose the lien on the entire property, on only the

8

taxpayer's interest, or not at all," *United States v. Morgan*, 554 F. Supp. 582, 587–88 (D. Colo. 1982), Mrs. Wilhite can hardly claim surprise about a sale. This factor weighs heavily in favor of a sale.

Third, the Court acknowledges that Mrs. Wilhite may suffer some prejudice but still finds that the third factor weighs in favor of a sale. *See Rodgers*, 461 U.S. at 711. Mrs. Wilhite has invested time and energy into AFC and a sale may affect or halt her monthly income. However, under the specific circumstances of this case, those setbacks do not outweigh the Government's right to force the sale and recover what it can of Mr. Wilhite's significant outstanding restitution obligation. Following the sale, Mrs. Wilhite will be compensated in proportion to her interest in AFC (26.1%), or in the alternative, Mrs. Wilhite may bid at the foreclosure sale to protect her interest and avoid foreclosure. With these protections in place, the prejudice to Mrs. Wilhite is minimal.

Finally, for the reasons previously articulated, Mrs. Wilhite's minority interest in AFC favors a forced sale. As this Court articulated in previous orders, Mrs. Wilhite, while declaring significant involvement in AFC, served merely as a "nominee" for Mr. Wilhite, the evident owner and operator of the company since its inception. *See Rocky Mountain Gold Mines v. Gold, Silver, & Tungsten*, 93 P.2d 973, 982 (Colo. 1939) (the court's goal is to determine "the real intention of the parties and the true nature of the transaction . . . no matter how many papers may have been executed to cover up the real purpose and give to the transaction an appearance other than the true one.").

Accordingly, having considered the totality of circumstances in this case and the applicable law, the Court concludes that a forced sale of AFC is warranted.

### III.     LIEN PRIORITY

In addition to the Government's lien flowing from Mr. Wilhite's criminal restitution obligation, Kubota Credit Corporation also has an outstanding lien on equipment owned by AFC. (Doc. # 182-1.) The Government argues that its lien is superior to Kubota's lien because it was perfected earlier in time. The Wilhites, however, contend that Kubota's lien is superior because, under Colorado law, if AFC is sold, the proceeds must be used to pay all AFC's debts before any proceeds are distributed to AFC's members.

The Wilhites' argument is misplaced. Federal law, not state law, determines the priority of competing liens asserted against Mr. Wilhite's property or rights to property. *United States v. Vorreiter*, 355 U.S. 15. Indeed, "It is beyond dispute that the 'effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 49 (1950). "The application of . . . federal law in reconciling the claims of competing lienors is based both upon logic and sound legal principles." *Aquilino v. United States*, 363 U.S. 509, 513–14 (1960). It promotes "the necessity for a uniform administration of the federal revenue statutes." *Id.* In accordance with 26 U.S.C. § 6323, where a "third party also claims interest in taxpayer's property, basic priority rule of first in time, first in right controls priority of tax lien versus third-party claim, unless Congress has created different priority rule to govern particular situation."

Because the Government's restitution lien was "first in time," it shall be satisfied before Kubota's equipment lien.[5]

---

[5] The Court also rejects the Wilhites' contention that ANB Bank maintains a lien on AFC that pre-dates the Government's restitution lien and that ANB should have been notified of this action. Mrs. Wilhite renegotiated the terms of her ANB loans into one large personal loan, which now

## IV. APPOINTMENT OF A RECIEVER

Federal courts have an inherent equitable power to appoint a receiver to manage a defendant's assets during the pendency of litigation. *See, e.g., Tanzer v. Huffines*, 408 F.2d 42, 43 (3rd Cir. 1969); *Levin v. Garfinkle*, 514 F.Supp. 1160, 1163 (E. D. Pa. 1981). More pointedly here, the Internal Revenue Code specifically provides that, at the Government's request, a court may "appoint a receiver to enforce the lien, or, upon certification by the Secretary during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity." I.R.C. § 7403(d).

The Government requests the appointment of a receiver and has provided the requisite proof of necessity. When a request is made for an appointment of a receiver under § 7403(d), the Government needs only to make a prima facie showing that a substantial tax liability probably exists and that the Government's collection efforts may be jeopardized if a receiver is not appointed. *See United States v. O'Connor*, 291 F.2d 520, 525 (2d Cir. 1961); *Florida v. United States*, 285 F.2d 596, 598 (8th Cir.1960). The appointment of a receiver is an especially appropriate remedy in cases involving fraud and the possible dissipation of assets since the primary consideration in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit. *See, e.g., Consolidated Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326–27 (1st Cir. 1988).

Considering the history of this case, Mr. Wilhite's underlying criminal offense, his substantial restitution obligations, and the Wilhites' persistent attempts to conceal Mr.

---

constitutes her personal debt, not AFC's debt. Indeed, the Colorado Secretary of State confirms that Kubota is the only other entity with an outstanding lien on AFC. (Doc. # 182-1.)

Wilhite's involvement and ownership interest in AFC, the Court has no trouble concluding that the appointment of a receiver is appropriate. The Court therefore appoints Mr. Edward B. Cordes[6] to serve as the Receiver in this case.

## V.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The Government's Motion for Entry of Decree of Sale and to Appoint a Receiver to Enforce Lien is GRANTED.  (Doc. # 168.)

2. In conjunction with this Order, the Court has also issued its Decree of Sale and Appointment of Receiver to Enforce Lien.[7]  (Doc. # 168-4.)

3. In light of the provisions contained in the Decree of Sale and Appointment of Receiver to Enforce Lien, the prior injunction, ordered on December 7, 2016, is no longer necessary and is therefore DISSOLVED.  (Doc. # 135.)

DATED:  March 14, 2018                                         BY THE COURT:

*Christine M. Arguello*

CHRISTINE M. ARGUELLO
United States District Judge

---

[6] Although the Wilhites object to the appointment of a receiver generally, they do not object to Mr. Cordes specifically serving as the receiver in this case, should the Court overrule their general objection.

[7] Although the Wilhites generally object to the appointment of a receiver as being unnecessary and "contrary to the rights accorded the owner of an LLC membership interest," (Doc. # 177 at 6, 14), they do not lodge any specific challenges the processes, duties, or any other procedure that is outlined in the Government's Proposed Order.  Although the Wilhites state in passing in a footnote the need for an "appropriate bond," they provide no legal support for that request and the Court declines to entertain it.